[Cite as *Davis v. Byers Volvo*, 2012-Ohio-882.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

TRACE DAVIS, et al.,                              :

    Plaintiffs-Appellants/,                      :   Case No.   11CA817
    Cross-Appellees

    vs.                                          :

BYERS VOLVO, et al.,                              :   DECISION AND JUDGMENT ENTRY


    Defendants,                                  :

    and                                          :

KIRK HERBSTREIT,                                  :

    Defendant-Appellee/                          :
    Cross-Appellant.

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:   Jason Shugart and D. Dale Seif, Jr., 110 East Emmit Avenue,
    Waverly, Ohio   45690

COUNSEL FOR APPELLEE:   John K. Keller and Christopher C. Wager, 52 East Gay
    Street, P.O. Box 1008, Columbus, Ohio 43216-1008

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-24-12


ABELE, P.J.

{¶ 1}   This is an appeal from a Pike County Common Pleas Court summary judgment in

favor of Kirk Herbstreit, defendant below and appellee/cross-appellant herein.

{¶ 2}   Trace and Tonya Davis, plaintiffs below and appellants/cross-appellees herein, raise

the following "assignments of error" for review:[1]

> FIRST ASSIGNMENT OF ERROR:
>
> "UNDER THE CONSUMER SALES PRACTICES ACT ("CSPA"),
> R.C. 1345.02(C), THE TRIAL COURT IS REQUIRED TO 'GIVE
> DUE CONSIDERATION AND GREAT WEIGHT TO FEDERAL
> TRADE COMMISSION ORDERS, TRADE REGULATIONS
> RULES AND GUIDES, AND THE FEDERAL COURTS'
> INTERPRETATIONS OF SUBSECTION 45(a)(1) OF THE
> "FEDERAL TRADE COMMISSION ACT," 38 STAT. 717 (1914), 15
> U.S.C.A. 41, AS AMENDED.'   IN 2009, THE FTC UPDATED THE
> GUIDES CONCERNING USE OF ENDORSEMENTS AND
> TESTIMONIALS IN ADVERTISING.   THE GUIDES CONTAIN
> FIVE FACTORS TO REVIEW WHEN ANALYZING CELEBRITY
> ENDORSEMENT CASES.
>
> DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY
> FAILING TO CONSIDER THE FTC RULES AND GUIDES AS
> REQUIRED BY THE CSPA?"
> SECOND ASSIGNMENT OF ERROR:
>
> "UNDER OHIO LAW, THE STATEMENTS MADE BY MR.
> HERBSTREIT WERE SUFFICIENT TO SURVIVE SUMMARY
> JUDGMENT.

---

[1]   Appellants' brief fails to designate proper assignments of error.   The "assignments of error" do not assign any error to the trial court's ruling.   See Painter and Dennis, Ohio Appellate Practice (2007 Ed.), Section 1.45 (stating that "the assignments of error * * * set forth the rulings of the trial court * * * contended to be erroneous"); see, also, App. R. Rule 16 (1992 staff notes) (setting forth an example of a proper assignment of error as, "The trial court erred in overruling defendant-appellant's motion for directed verdict. (Tr. ___)").   Instead, appellants have framed them as propositions of law.   While a proposition of law is appropriate in an appellate brief to the Ohio Supreme Court, an "assignment of error" is appropriate in an appellate brief to an Ohio appellate court.   See App.R. 16(A)(3); S.Ct. R.P. 6(B)(1).   Because appellants do not raise appropriate assignments of error, we would be within our discretion to simply disregard their arguments.   See State v. Maxson (1990), 66 Ohio App.3d 32, 36, 583 N.E.2d 402 (declining to address an appellant's alleged error "[b]ecause the assignment is advanced as a proposition of law rather than as an assignment of error, [and] it does not comply with the Appellate Rules"); see, also, Headings v. Ranco, Inc., Union App. No. 14-04-33, 2005-Ohio-1095, ¶6.   We will, nevertheless, construe the improperly-framed "assignments of error" as asserting error in the trial court's summary judgment ruling.   See Geico Gen. Ins. Co. v. Van Meter, Ross App. No. 07CA3002, 2008-Ohio-5110, fn.1.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY HOLDING THE STATEMENTS MADE BY MR. HERBSTREIT WERE NOT SUFFICIENT TO SURVIVE SUMMARY JUDGMENT?"

THIRD ASSIGNMENT OF ERROR:

"UNDER OHIO LAW AND SHUMAKER [V. HAMILTON CHEVROLET, INC., 184 OHIO APP.3D 326, 2009-OHIO-5263, 920 N.E.2D 1023], THE TRIER OF FACT SHOULD CONSIDER THE FACTS FROM THE CONSUMER'S POINT OF VIEW WHEN DETERMINING WHETHER A VIOLATION OF THE CSPA OCCURRED.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY FAILING TO CONSIDER THE FACTS FROM THE CONSUMER'S POINT OF VIEW?"

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT HELD, 'A REVIEW OF THE COMPLAINT WILL VALIDATE THAT PLAINTIFF'S (SIC) MAKE NO CLAIMS IN REGARDS TO THE ORIGINAL PURCHASING DECISION BEING INFLUENCED BY MR. HERBSTREIT.' PLAINTIFFS CLEARLY STATED IN THEIR COMPLAINT THAT THE ORIGINAL PURCHASE WAS AT A DEALERSHIP IN WEST VIRGINIA AND PLAINTIFFS HAVE NO BASIS TO ALLEGE CSPA VIOLATIONS AGAINST THE ORIGINAL SELLER OF THE VEHICLE.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY MISINTERPRETING THE CSPA TO ONLY APPLY TO THE FIRST VISIT TO A BUSINESS?"

FIFTH ASSIGNMENT OF ERROR:

"UNDER OHIO LAW, EACH VISIT TO A DEALERSHIP FOR SERVICE WORK IS AN INDEPENDENT TRANSACTION. SEE KELLER V. PRIDE CHEVROLET, INC., (9TH DIST., 1988) 1988 WL 107009, OHIO PUBLIC INSPECTION FILE ('OPIF') NO. 1165; KHOURI V. LEWIS (C.P. CUYAHOGA, AUGUST 8, 2001), OPIF NO. 1995. THE CONDUCT OF SALES AND SERVICE REPRESENTATIVES MAY DIFFER FROM ONE VISIT TO THE

NEXT AND DIFFERENT VIOLATIONS OF THE CSPA CAN OCCUR DURING EACH TRANSACTION.   PLAINTIFFS CLEARLY STATE IN THEIR COMPLAINT THAT MR. HERBSTREIT DID NOT INFLUENCE THEIR INITIAL DECISION TO TAKE THEIR CAR TO DEFENDANTS, BUT PLAINTIFFS STATE MR. HERBSTREIT WAS A STRONG INFLUENCE IN THEIR DECISIONS TO CONTINUE TO TAKE THEIR CAR TO DEFENDANTS AFTER 15 VISITS THAT FAILED TO CORRECT THE PROBLEMS WITH THE VEHICLE.  THE TRIAL COURT HELD, 'PLAINTIFFS MAKE NO CLAIMS THAT MR. HERBSTREIT INFLUENCED THEIR DECISION TO TAKE THEIR VEHICLE TO BYERS AUTO OR BYERS VOLVO.'

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ONLY CONSIDERING THE INITIAL DECISION TO GO TO BYERS AND FAILING TO CONSIDER EACH VISIT TO BYERS AS A SEPARATE, ACTIONABLE, TRANSACTION?"

SIXTH ASSIGNMENT OF ERROR:

"UNDER CIV.R. 56, THE TRIAL COURT IS REQUIRED TO CONSTRUE THE EVIDENCE MOST STRONGLY IN FAVOR OF PLAINTIFFS.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY FAILING TO CONSTRUE THE EVIDENCE MOST STRONGLY IN FAVOR OF PLAINTIFFS?"

SEVENTH ASSIGNMENT OF ERROR:

"UNDER OHIO LAW, A CSPA VIOLATION SATISFIES THE 'UNDERLYING TORT' REQUIREMENT OF A COMMON LAW CIVIL CONSPIRACY CLAIM.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN DISMISSING THE CIVIL CONSPIRACY COMPLAINT WHEN PLAINTIFFS' CSPA CLAIMS WERE INSUFFICIENT TO SURVIVE SUMMARY JUDGMENT, AND IF SO, DOES A CSPA VIOLATION SATISFY THE 'UNDERLYING TORT' REQUIREMENT OF A CIVIL CONSPIRACY CLAIM?"

{¶ 3}  Appellee/Cross-Appellant raises the following assignment of

{¶ 4}  error:

"THE TRIAL COURT ERRED WHEN IT DENIED
DEFENDANT-APPELLEE-CROSS APPELLANT'S MOTION
FOR ATTORNEYS' FEES PURSUANT TO O.R.C.
1345.09(F)(1)."

{¶ 5}  The present case involves appellants' allegation that appellee's statements in Byers

Auto commercials constituted unfair or deceptive acts or practices.   In 2004, appellants purchased

a Volvo XC-90 from a West Virginia car dealership.   Before appellee ever appeared in Byers'

advertisements, appellants took their vehicle to Byers for service on fourteen different occasions.

After appellee appeared in the commercials, appellants took their vehicle to Byers' service

department an additional seven times.   Appellees claim that they continued to take their vehicle to

Byers for service, even after fourteen prior visits failed to completely fix the vehicle, based upon

the television advertisements in which appellee appeared.

{¶ 6}  Appellants subsequently filed a complaint against numerous defendants, including

appellee.   While appellants' complaint contains several claims for relief, only three involve

appellee.   Appellants alleged that: (1) appellee violated the Consumer Sales Practices Act by

engaging in unfair and deceptive acts;[2] (2) appellee committed negligent misrepresentation; and

---

[2] The only paragraph contained within their CSPA claim that relates to appellee states:   "71.   All Defendants committed unfair and deceptive acts by misrepresenting the quality of the Vehicle."   Except for paragraph 71 of their amended complaint, appellants have not otherwise alleged that appellee misrepresented the quality of the vehicle.   As explained later in this opinion, appellants never clearly set forth their specific CSPA claim against appellee, but appellants appear to assert that appellee engaged in unfair and deceptive acts of practices by appearing in the Byers commercials.   They apparently believe that, through those commercials, appellee misrepresented the quality of the Byers service department.

(3) appellee engaged in a civil conspiracy.

{¶ 7}   On September 13, 2010, appellee filed a summary judgment motion and argued that

no genuine issues of material fact remained regarding appellants' three claims for relief against

him.   Regarding appellants' CSPA claim, appellee asserted that appellants cannot demonstrate

that: (1) appellee made a deceptive or misleading statement; or (2) appellee's statements would

induce a reasonable person to continue taking a vehicle to Byers for service after fourteen prior

failed service visits.   Regarding appellants' negligent misrepresentation claim, appellee contended

that no genuine issues of material fact remained as to whether appellee made a false or misleading

statement concerning the quality or workmanship of the Byers service department.   Appellee

further argued that because appellants cannot demonstrate the existence of a material fact regarding

either of the foregoing torts, appellants do not have a valid civil conspiracy claim.

{¶ 8}   Appellee supported his motion with an affidavit from the Byers employee

responsible for advertising.   In the affidavit, the employee stated that Byers did not ask appellee to

speak to the quality and workmanship of the Byers service department and that he did not do so in

the advertisements.   The employee also attached a copy of the statements that appellee made in the

commercials:

> "Byers has served Central Ohio's transportation needs since 1897, the same
> year the Big Ten Conference was established.   Now, that's a tradition of excellence
> and a record to be proud of.   ByersAuto.Com, Ohio's largest on-line selection.
> ByersAuto.com, 20 franchises, one location.   ByersAuto.com.   No one sells more
> vehicles in Central Ohio.   Thousands of vehicles, all on sale now at
> ByersAuto.com.   Click it, buy it, drive it, and ByersAuto.com."

> "Who has time to drive around looking for the perfect car?   Save yourself
> time.   Visit all 20 of our franchises at one location.   Click it, buy it, drive it, at
> ByersAuto.com, Ohio's largest on-line selection.   ByersAuto.com.   Twenty
> franchises, one location.   ByersAuto.com.   No one sells more vehicles in Central

Ohio.   Thousands of vehicles all on sale 24 hours a day at ByersAuto.com.   Click it, but it, drive it at ByersAuto.com."

"Click it, buy it, drive it at ByersAuto.com.   Byers has more brands than Ricart and Germain combined, which means that Byers can offer you the best selection, the best price and dedicated internet specialists to assist you.   Click it, but it, drive it at ByersAuto.com.   Byers is the oldest and largest dealer in Central Ohio.   ByersAuto.com.   That's B-Y-E-R-S Auto.com.   Click it, buy it, drive it at ByersAuto.com."

"Click it, buy it, drive [it] at ByersAuto.com.   For the best selection and the best price go to one place, ByersAuto.com.   Click it, buy it, drive it at ByersAuto.com.   Byers is the oldest and largest dealer in Central Ohio.   We have more brands than Ricart and Germain combined, all at one location, ByersAuto.com.   That's B-Y-E-R-S Auto.com.   Click it, buy it, drive it at ByersAuto.com."

"Click it, schedule it, service it at ByersAuto.com.   Byers sells and services more vehicles than anyone in Central Ohio.   At ByersAuto.com, you're only one click away from scheduling your next service appointment at any of our convenient locations.   Click it, schedule it, service it at ByersAuto.com.   Sales and service all in one location, ByersAuto.com.   That's B-Y-E-R-S Auto.com.   Click it, schedule it, service it at ByersAuto.com."

{¶ 9}   In opposition, appellants argued that whether appellee's statements influenced their decision to continue to take their vehicle to Byers, despite repeated prior failed attempts to fix the vehicle, constitutes a question of fact that only a jury can decide.   Appellants asserted that they "took the car back another 7 times because they refused to believe a nationally recognized spokesperson could endorse a negligent and/or deceptive company."   Mr. Davis averred in an affidavit:

"I continued to return to Byers for servicing of the vehicle after numerous faulty repairs as a result of [appellee]'s endorsements for Byers.   If [appellee] was not endorsing Byers Auto, then I would have taken my car elsewhere.
* * * *
I continued to take the Vehicle to Byers because [appellee] is a nationally known spokesperson who would not endorse a business that cheats customers."

In her affidavit, Mrs. Davis likewise stated: "My husband continued to return to Byers, after others told us not to, because of the endorsements by [appellee]."

{¶ 10} In reply, appellee reiterated that appellants have not alleged a false or deceptive statement that appellee made regarding the quality of the Byers service department. He asserted: "The fact that [appellee] was featured in advertisements that urged viewers to visit Byers' website and accurately described the size and history of the dealership does not mean that [appellee] made deceptive or misleading statements."

{¶ 11} On December 28, 2010, the trial court entered summary judgment in appellee's favor. This appeal followed.

I

{¶ 12} Although appellants set forth seven "assignments of error," the crux of their argument is that the trial court erred by awarding appellee's summary judgment. Appellants argue in essence that the trial court erred by concluding that no genuine issues of material fact exist regarding their CSPA and civil conspiracy claims against appellee.[3] Appellants assert that genuine issues of material fact remain as to whether appellee's statements are deceptive under Ohio law and under the FTC endorsement guides. Appellants further contend that the trial court did not apply the law correctly when it ruled on the summary judgment motion. They argue that the trial court: (1) failed to consider the FTC endorsement rules; (2) failed to consider the facts from the consumer's viewpoint; and (3) failed to view the evidence most strongly in appellants' favor. Appellants additionally assert that the trial court wrongly interpreted the CSPA to apply only

---

[3] We observe that appellants have not raised any issue on appeal regarding their negligent misrepresentation claim.

to their first visit to the business and that the court failed to consider each visit a separate

actionable consumer transaction.   Appellants lastly claim that the trial court erred by entering

summary judgment on their civil conspiracy claim when genuine issues of material fact remain

regarding the underlying tort, i.e., their CSPA claim.

{¶ 13} Because appellants have not raised proper assignments of error, we do not

necessarily address their arguments in the same order as presented in their brief.   Rather, we will

address them in what we perceive to be a more logical order.   Furthermore, when practical, we

have combined the arguments.

II

{¶ 14} The same basic standard of review governs appellants' seven assignments of error.

Appellate courts review trial court summary judgment decisions de novo.   Grafton v. Ohio Edison

Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.   Accordingly, appellate courts must

independently review the record to determine if summary judgment is appropriate.   In other words,

appellate courts need not defer to trial court summary judgment decisions.   See Brown v. Scioto

Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley

(1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786.   Thus, to determine whether a trial court

properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary

judgment standard as well as the applicable law.   Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or

stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶ 15}** Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

**{¶ 16}** Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a material fact.   Id.; Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.   The moving party cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case.   See Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 147, 677 N.E.2d 308; Dresher, supra.   Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims.   Civ.R. 56(C); Dresher, supra.

**{¶ 17}** "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the

existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment." Pennsylvania Lumbermans Ins. Corp. v. Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 742, 675 N.E.2d 65. Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Dresher, supra. A trial court may grant a properly supported summary judgment motion if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Id.; Jackson v. Alert Fire & Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027.

III

{¶ 18} Appellants' first six assignments of error concern the summary judgment regarding appellants' CSPA claim. Because the same general principles apply to these assignments of error, we have combined them for ease of analysis.

{¶ 19} In their first, second, third, fourth, fifth, and sixth assignments of error, appellants argue that the trial court erred by concluding that no genuine issues of material fact remained as to whether appellee's statements amounted to unfair or deceptive acts or practices. Each assignment of error raises a more specific reason why the trial court wrongly concluded that genuine issues of material fact do not exist.

{¶ 20} In their first assignment of error, appellants assert that the trial court improperly determined that no genuine issues of material fact remained as to whether appellee's statements amount to unfair or deceptive acts or practices. They claim that had the trial court properly applied the law–specifically R.C. 1345.02(C)–it would have determined that genuine issues of

material fact remains.   Appellants argue that the trial court ignored the R.C. 1345.02(C) mandate to "give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the 'Federal Trade Commission Act."   More particularly, appellants argue that the trial court erred by failing to consider the FTC celebrity endorsement guides.   Appellants contend that if the trial court had applied the FTC celebrity endorsement guides, it would have concluded that genuine issues of material fact remain to be litigated regarding whether appellee: (1) purchased a car from Byers; (2) paid to have a car serviced by Byers; (3) purchased products or services from Byers Auto; and (4) obtained vehicles and service work as compensation for his advertising services.

{¶ 21}  In their second assignment of error, appellants claim that genuine issues of material fact remain regarding the truthfulness of the statements appellee made in the advertisements.

{¶ 22}  In their third assignment of error, appellants assert that the trial court erred by failing to consider appellee's statements from the consumer's viewpoint.

{¶ 23}  In their fourth assignment of error, appellants argue that the trial court improperly interpreted the CSPA to apply only to a consumer's first visit to a business.

{¶ 24}  In their fifth assignment of error, appellants contend that the trial court erred by failing to consider each of appellants' service visits to Byers as a separate, actionable consumer transaction.

{¶ 25}  In their sixth assignment of error, appellants claim that the trial court failed to construe the evidence most strongly in their favor.

A

{¶ 26}  The Ohio CSPA is codified at R.C. Chapter 1345.   R.C. 1345.02(A) sets forth the

general prohibition against unfair or deceptive acts or practices and states:

> (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.   Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.[4]

Because the CSPA "is a remedial law which is designed to compensate for traditional consumer remedies," a court must liberally construe it.   Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, citing R.C. 1.11 and Roberts and Martz, Consumerism Comes of Age: Treble Damages and Attorney Fees in Consumer Transactions–the Ohio Consumer Sales Practices Act (1981), 42 Ohio St. L.J. 927, 928-929.   The statute further directs courts to "give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the 'Federal Trade

---

[4]   In the case at bar, neither party has disputed whether the CSPA applies to appellants' claims against appellee. Thus, we assume for purposes of argument that appellants are "consumers," that appellee is a "supplier," and that the advertisement represented a "consumer transaction."     R.C. 1345.01(A), (C), and (D) define "consumer," "supplier," and "consumer transaction" as follows:

> (A) "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. * * *

> (C) "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. * * *

> (D) "Consumer" means a person who engages in a consumer transaction with a supplier.

Moreover, we observe that appellee has not argued that the R.C. 1345.12(B) exclusion renders the CSPA inapplicable to his statements.     R.C. 1345.12(B) states that the CSPA does not apply to: "A publisher, broadcaster, printer, or other person engaged in the dissemination of information or the reproduction of printed or pictorial matter insofar as the information or matter has been disseminated or reproduced on behalf of others without knowledge that it violated sections 1345.01 to 1345.13 of the Revised Code[.]"

Commission Act,' 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." R.C. 1345.02(C).

B

{¶ 27} Some courts have held that whether any given act or practice may be unfair or deceptive is ordinarily an issue of fact to be decided from all the relevant facts and circumstances in the particular case. Mannix v. DCB Service, Inc., Montgomery App. No. 19910, 2004-Ohio-6672, ¶18; Swiger v. Terminix Intern. Co. (June 28, 1995), Montgomery App. No. 14523. We do not believe, however, that in all CSPA cases a jury must decide whether a defendant engaged in a deceptive act or practice. Instead, when the evidence plainly reveals that a reasonable jury could not find that the act or practice misled a reasonable consumer, then whether a defendant engaged in a deceptive act or practice may be determined as a matter of law.[5] See Shumaker v. Hamilton Chevrolet, Inc., 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, at ¶22 (appearing to decide, as a matter of law, that supplier did not engage in deceptive act or practice); Chesnut v. Progressive Cas. Ins. Co., 166 Ohio App.3d 299, 2006-Ohio-2080, 850 N.E.2d 751, ¶25 (concluding as matter of law that supplier did not engage in deceptive act or practice); Dayton Sports Center, Inc. v. 9-Ball, Inc. (2001), 141 Ohio App.3d 402, 406, 751 N.E.2d 520. (concluding, seemingly as a matter of law, that statement constituted puffery). Moreover, we think that the wiser rule might be that whether an act or practice is deceptive is ordinarily a question of law. If whether an act or practice is deceptive is left to a jury to decide, suppliers will lack guidance as to how to conduct their affairs so as to comply with CSPA.

---

[5] Courts apply a similar principle in summary judgment cases that involve comparative negligence, which is ordinarily a question of fact. See, e.g., Robson v. Quentin E. Cadd Agency, 179 Ohio App.3d 298, 2008-Ohio-5909, 901 N.E.2d 835, ¶28.

C

**{¶ 28}** "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product [or service] they are receiving * * *." Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶24 (footnote omitted). Other courts have defined a deceptive act as one that "'has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" Chesnut at ¶23, quoting McCullough v. Spitzer Motor Ctr., Inc. (Jan. 27, 1994), Cuyahoga App. No. 64465. Generally, "'[t]he basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract.'" Id., quoting Mannix at ¶18.

**{¶ 29}** Another court defined a deceptive act as one that "has the tendency or capacity to mislead consumers concerning a fact or circumstance material to a decision to purchase the product or service offered for sale." Cranford v. Joseph Airport Toyota, Inc. (May 17, 1996), Montgomery App. No. 15408; see, also, Wiseman v. Kirkman, Darke App. No. 1575, 2002-Ohio-5384, ¶41; Richards v. Beechmont Volvo (1998), 127 Ohio App.3d 188, 190-191, 711 N.E.2d 1088. In other words:

> "In order to be deceptive, and therefore actionable, a [supplier's] act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved. A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not 'deceptive' within the meaning of the [CSPA] * * *."

Cranford, supra. Thus, a deceptive act contains two elements: (1) falsity; and (2) materiality.

**{¶ 30}** In addition to the judicial definitions, R.C. 1345.02(B) contains a non-exhaustive

list of specific acts that constitute deceptive acts or practices:

> Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
> (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
> (3) That the subject of a consumer transaction is new, or unused, if it is not;
> (4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;
> (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;
> (6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;
> (7) That replacement or repair is needed, if it is not;
> (8) That a specific price advantage exists, if it does not;
> (9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;
> (10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.[6]

{¶ 31} In addition to affirmatively defining a deceptive act or practice, courts also have set forth certain acts and practices that do not constitute a deceptive act or practice. Thus, "statements of mere puffing or opinion [are] not actionable under the [CSPA]." Howard v. Norman's Auto Sales, Franklin App. No. 02AP-1001, 2003-Ohio-2834, ¶34. "Puffery" is generally defined as "'exaggerated blustering or subjective boasting upon which no reasonable consumer would rely.'" Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc. (N.D.Ohio 2009), 649 F. Supp.2d 702, 725-726; see, also, Federal Exp. Corp. v. U.S. Postal Serv. (W.D.Tenn. 1999), 40 F.

---

[6] In the case sub judice, appellants have not specified with any particularity which of the R.C. 1345.02(B) deceptive acts or practices appellee allegedly committed. After reviewing their arguments, however, it appears that their claim falls under the broad prohibition contained in R.C. 1345.02(A) against unfair and deceptive acts or practices.

Supp.2d 943, 954, citing Castrol Inc. v. Pennzoil Co. (C.A.3, 1993), 987 F.2d 939, 945 (defining

puffery as "an exaggeration or overstatement expressed in broad, vague and commendatory

language"); Stiffel Co. v. Westwood Lighting Group (D.N.J. 1987), 658 F. Supp. 1103, 1114

(defining puffery as advertising the advantages of a product including claims of general

superiority); Smith-Victor Corp. v. Sylvania Electric Products, Inc. (N.D.Ill. 1965), 242 F. Supp.

302 (concluding that statements that product was "far brighter than any lamp ever before offered

for home movies" and that it "floods an area greater than the coverage of the widest angle lens"

constitute puffery).

{¶ 32} "The term 'Puffing' refers generally to an expression of opinion not made as a

representation of fact.   A seller has some latitude in puffing his goods, but he is not authorized to

misrepresent them or to assign to them benefits they do not possess.   Statements made for the

purpose of deceiving prospective purchasers cannot properly be characterized as mere puffing."

{¶ 33} FTC Policy Statement on Deception (Oct. 14, 1983), at fn.42, available at

http://www.ftc.gov/bcp/policystmt/ ad-decept.htm (citations omitted).

{¶ 34} In general, "[m]ost statements of puffery consist of vague advertising claims that

one's product is better than comparable products offered by competitors."   Federal Exp., 40 F.

Supp.2d 955, fn.7.   Examples of puffery include "boastful assertions and exaggerated

descriptions," such as "luxuriously soft," "the real McCoy," and "classic detail."   See Diamond

Co. v. Gentry Acquisition Corp., Inc. (1988), 48 Ohio Misc.2d 1, 7, 531 N.E.2d 777.

Additionally, calling a product "'redesigned and improved' is mere puffery which is not

actionable."   Interactive Products Corp. v. a2z Mobile Office Solutions, Inc. (C.A.6, 2003), 326

F.3d 687, 699.   Furthermore, claiming that a product "outlasts traditional [similar products] and

provides 'unmatched power'" and that the product "is 'revolutionary' and 'unique' constitute[]
'general claim[s] of superiority over comparable products that [are] so vague that [they] can be
understood as nothing more than mere expression of opinion.'" Allied Erecting and Dismantling
Co., Inc. V. Genesis Equip. & Mfg., Inc. (N.D.Ohio 2009), 649 F. Supp.2d 702, 725-726 & fn.2.
Moreover, deceptive acts ordinarily do not encompass "subjective claims (taste, feel, appearance,
smell) or * * * opinion claims if consumers understand the source and limitations of the opinion."
FTC Policy Statement, supra.

{¶ 35} Generally, a court that is determining whether a supplier committed a deceptive act
or practice must view the act or practice from a reasonable consumer's standpoint.[7]  See
Shumaker at ¶¶19 and 30 (evaluating act from a reasonable consumer standpoint); Knoth v. Prime
Time Marketing Management, Inc., Montgomery App. No. 20021, 2004-Ohio-2426, ¶31
(recognizing that court must view act or practice from consumer's perspective and holding that
"consumer's perceptions must * * * be reasonable ones under the circumstances"); see, also,
Struna v. Convenient Food Mart, 160 Ohio App.3d 655, 2005-Ohio-1861, 828 N.E.2d 647, ¶15
(stating that court must use a reasonableness standard when evaluating alleged unfair or deceptive
act or practice).[8]

---

[7]  The analysis by Ohio courts of the Ohio CSPA is substantially similar to the analysis that the FTC uses.    See FTC
Policy Statement on Deception (setting forth three-part standard FTC uses when determining whether an act or practice is
deceptive: "First, there must be a representation, omission or practice that is likely to mislead the consumer"; "Second, we
examine the practice from the perspective of a consumer acting reasonably in the circumstances"; "Third, the representation,
omission, or practice must be a 'material' one").

[8]  The FTC Policy Statement on Deception explains the rationale for the reasonable consumer test by pointing to a
case example:

"'An advertiser cannot be charged with liability with respect to every conceivable misconception,

D

{¶ 36} Appellants do not clearly set forth the particular statement or statements that they claim constitute deceptive acts or practices. In their complaint, however, they refer to appellee's statement that "Byers Auto sells and services more vehicles than anyone in central Ohio." On appeal and in their memorandum in opposition to appellee's summary judgment motion, they generally assert that the following statements appellee made could mislead a consumer:

> "Byers has served Central Ohio's transportation needs since 1897, the same year the Big ten Conference was established. Now, that's a tradition of excellence and a record to be proud of."

> "No one sells more vehicles in Central Ohio."

> "Byers has more brands than Ricart and Germain combined, which means that Byers can offer you the best selection, the best price and dedicated internet specialists to assist you."

> "For the best selection and the best price go to one place, ByersAuto.com. Click it, buy it, drive it at ByersAuto.com. Byers is the oldest and largest dealer in Central Ohio. We have more brands than Ricart and Germain combined, all in one location, ByersAuto.com."

> "Byers sells and services more vehicles than anyone in Central Ohio. At ByersAuto.com, you're only one click away from scheduling your next service appointment at any of our convenient locations."

---

however outlandish, to which his representations might be subject among the foolish or feeble-minded. Some people, because of ignorance or incomprehension, may be misled by even a scrupulously honest claim. Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made in Denmark. Is it therefore an actionable deception to advertise 'Danish pastry' when it is made in this country? Of course not. A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.'"

FTC Policy Statement, quoting Heinz v. Kirchner (1963), 63 F.T.C. 1282, 1290.

**{¶ 37}** In order for any of the above statements to be actionable, appellants must establish that the statement would mislead a reasonable consumer about the nature or quality of the services the consumer is to receive, or, in other words, that the statement has a likelihood of inducing a belief in a reasonable consumer that is not in accord with the facts. During the trial court proceedings, appellee submitted an affidavit from the Byers employee responsible for advertising that stated that appellee did not speak to the quality or workmanship of the Byers service department. In response to appellee's motion, appellants failed to identify a specific statement that mislead them about the quality of the Byers service department. They summarily asserted that the foregoing statements "made in the Ohio market by Buckeye football great Kirk Herbstreit, could reasonably induce, in a consumer's mind, a belief that Byers Auto would provide 'superior and more trustworthy service and advice concerning its products.'" Additionally, they failed to respond with any evidence tending to establish such a likelihood. Instead, they relied upon their own subjective beliefs to which they attested in affidavits.[9] In particular, Mr. Davis stated:

---

[9] We recognize that appellants stated in their memorandum opposing appellee's summary judgment motion that they "will produce substantial evidence ranging from psychology experts discussing the effects of celebrity marketing on American consumers and human consumers, in general." They did not, however, submit any such evidence in response to appellee's summary judgment motion. Rather, appellants relied upon a conclusory allegations that "celebrity endorsers commit unfair and deceptive acts when they endorse negligent service providers." Regardless of the correctness of this assertion, appellants did not produce any evidence that appellee had knowledge of the quality of the Byers' service department. Moreover, appellee did not make any statement attesting to the quality of the Byers' service department.

Appellants further argued: "The effect of an individual like Kirk Herbstreit, 'Mr. College Football,' advertising automobiles in the Ohio State Buckeye market area indicated to [appellants] that they could expect this same excellence from Byers Auto." This statement is non-sensical. Additionally, appellants did not present any evidence to establish a relationship between appellee's statements regarding the history and size of Byers and the quality of service a reasonable consumer could expect to receive.

Perhaps most telling about the inadequacy of appellants' memorandum opposing appellee's summary judgment motion is their statement in their reply brief's conclusion that they "sufficiently pled their CSPA claims to survive summary

"I am a Buckeye fan and a fan of [appellee].
I continued to return to Byers for servicing of the vehicle after numerous faulty repairs as a result of [appellee]'s endorsements for Byers. If [appellee] was not endorsing Byers Auto, then I would have taken my car elsewhere.
I continued to take the Vehicle to Byers because [appellee] is a nationally known spokesperson who would not endorse a business that cheats customers."

Noticeably absent from Mr. Davis's affidavit is any assertion that appellee's statements, in and of themselves, misled him about the quality of the Byers service department. Instead, Mr. Davis's averments rely upon appellee's purported celebrity status alone as an indicator of deception. His basic claim is that only because appellee is a celebrity did he believe that he would receive superior service from Byers. We are unaware of any case stating that celebrity status alone demonstrates deceptiveness, and appellants have cited none. We further note that the point of the CSPA is to prohibit deceptive acts or practices. We are unable to conceive how a celebrity speaking on behalf of a corporation, by itself, establishes deceptiveness. Moreover, we believe that a reasonable consumer might well find it foolish to place as much trust as Mr. Davis claims to have placed in appellee when determining where to take a vehicle for service. There is no correlation between football and a car dealership. A reasonable consumer would not attribute any expertise to a former college football player and current sports broadcaster regarding the quality of a car dealer's service department simply by virtue of the dealer using such a person to relay its advertising message.

{¶ 38} Appellants nonetheless assert that the trial court failed to consider appellee's statements from "the consumer's point of view" and to evidence this assertion, they claim that the

---

judgment." It is well-established that to survive summary judgment, a party may not rely upon the pleadings. See Civ.R. 56(E). Whether appellants sufficiently pled their CSPA claims would be relevant if this case involved a motion to dismiss. Being that it does not, appellants must do more than rely upon the pleadings.

court did not consider Mr. Davis's affidavit in which he avers that appellee influenced his decision to take his car to Byers' service department. However, this argument is based upon appellants' mistaken impression that a court must view the advertisement from the viewpoint of the consumer who is bringing the CSPA claim–a subjective viewpoint–rather than the viewpoint of a reasonable consumer–an objective viewpoint. Mr. Davis's affidavit establishes nothing more than his subjective interpretation of the advertisements. Thus, the trial court had no obligation to consider the advertisements from Mr. Davis's subjective viewpoint.

{¶ 39} Additionally, although appellants do not specify the particular statements that they find objectionable, other than the "tradition of excellence" statement, the foregoing statements constitute puffery. A reasonable consumer viewing an advertisement comparing Byers to the Big Ten and a "tradition of excellence" would recognize the advertisement as mere boasting. Thus, simply because appellants subjectively interpreted this statement in a different manner does not make it deceptive.[10] Instead, a reasonable consumer would interpret this statement as a general claim of superiority, which constitutes puffery and is not actionable under the CSPA.

{¶ 40} The remaining statements relate to the size and selection of the Byers' dealership. The statements claim that Byers is the largest, offers the best selection and services more cars than anyone in central Ohio. Courts have routinely held that claims of general superiority are not

---

[10] In an attempt to demonstrate that appellee's statement regarding a "tradition of excellence" was deceptive, appellants's memorandum in opposition to appellee's summary judgment motion relied upon the supposed "fallacy of tradition," for which they cited no authority. They claimed that the statement regarding a "tradition of excellence" is false "by definition," because it employs "a well-known fallacy of logic called the fallacy of tradition, also known to marketers and advertisers as the 'Appeal to tradition.'" Appellants did not cite any authority for this position. However, it does appear that this part of the argument was largely copied from nizkor.org/features/fallacies/appeal-to-tradition.html, an internet website.

actionable as deceptive acts or practices.   More importantly, not one of appellee's statements explicitly attests to the quality of the Byers service department or to the quality of service that a consumer can expect to receive at the dealership.

{¶ 41} Appellants assert, however, that some of appellee's statements contain objectively verifiable facts, and, to this extent, the statements do not constitute mere puffery.   In support, appellants rely upon Dayton Sports Center, Inc. v. 9-Ball, Inc. (2001), 141 Ohio App.3d 402, 751 N.E.2d 520.   In Dayton Sports, the plaintiff brought claims against a company under Ohio common law, the Lanham Act, the Ohio Deceptive Trade Practices Act, and the CSPA.   The plaintiff alleged that the company engaged in false and deceptive advertising by making the following statements in its commercials: (1) the company "has been family-owned since 1949"; (2) the company "is Ohio's largest Brunswick [pool tables] distributor"; and (3) "Brunswick is 'the World's Leader in Billiards."   The trial court dismissed all of the plaintiff's claims.

{¶ 42} On appeal, the plaintiff asserted, in part, that the trial court erred by entering summary judgment in the company's favor regarding the Lanham Act claim.   It contended that the company "failed to place in dispute the factual allegations contained in its complaint because it did not present any evidentiary material to show that the subject advertising was not false and deceptive."   Id. at 405.   The court determined that a genuine issue of material fact remained as to the truthfulness of the statement that the company is Ohio's largest distributor of Brunswick products.   The company's owner stated in his deposition that "he was aware that [the defendant] is not in the 'top twenty of Brunswick dealers.'"   Id. at 406.   The court stated: "It follows from his testimony, then, that [the company] is not the largest seller of Brunswick products in the state of Ohio."   Id. at 406.   The court next considered the company's claim that it has been family-owned

since 1949.   The plaintiff argued that the "statement implies that [the company] has been owned

by one family since that time."   Id. at 406.   The plaintiff asserted, however, that two different

families have owned the company during that time and that the company has only been in the

billiards business for a few years.   The court concluded that the statement:

> "is capable of being reasonably construed to mean that [the company] has been in
> the billiards business since 1949 and that there has been a continuity of family
> ownership since that time.   The very reason that this would be of interest to a
> potential consumer is that the consumer might take comfort in the family's
> commitment to the community and its familiarity with billiard tables.   If, as [the
> company] argues, these statements were intended to convey only that [the
> company], since 1949, has been in business of some kind, unrelated to billiard
> tables, and has been owned by two or more families, this would not seem likely to
> be of much interest to potential customers."

Id. at 406.

{¶ 43}   The court determined that the statement that "Brunswick is 'The World's Leader in

Billiards,'" constitutes "a general assertion, or exaggerated claim, of superiority, constituting

'puffery,' which is not actionable under the Lanham Act."   Id. at 406.   With respect to the other

two statements, however, the court concluded:

> "that the first two statements might be found to be misleading concerning [the
> company]'s commercial activities.   Specifically, a consumer might be persuaded
> that because [the company] has been a family-owned concern in the business of
> selling billiard tables since 1949, and the largest Ohio distributor * * *, it might
> offer superior and more trustworthy service and advice concerning its products.
> Thus, a reasonable juror might find that a consumer might be persuaded to purchase
> from [the company] based upon this advertising.   Therefore, if the advertising is
> proven false * * * a reasonable jury might find that these statement violate the
> Lanham Act."

Id. at 406-407.   The appellate court thus affirmed the trial court's judgment dismissing the

plaintiff's common law and Deceptive Trade Practices Act claims, but reversed the trial court's

decision dismissing the plaintiff's Lanham Act claim.

{¶ 44} In the case sub judice, appellants assert that, similarly, appellee's statements that Byers is the oldest and largest dealership and that it services more vehicles than anyone in central Ohio might lead a reasonable consumer to believe that Byers "might offer superior and more trustworthy service and advice." To the extent that the statements contained in the Byers commercial are sufficiently similar to the statements in Dayton Sports, we respectfully disagree with the Dayton Sports court. We believe that the statements contained in the Byers commercial are vague claims of superiority–by claiming that they service more vehicles, they claim to be superior to competitors. The federal courts have routinely held these types of statements to constitute puffery, which is not actionable under the CSPA. We therefore choose to follow the federal courts' interpretations and conclude that the statements contained in the Byers' commercials constitute puffery.

{¶ 45} We further point out that in the Dayton Sports case, at least some evidence existed that the statements may not be true. In the case at bar, nothing in the record indicates that appellee's statements may not be true.

E

{¶ 46} Appellants further assert that if we consider appellee's statements in the context of the 2009 FTC revised endorsement guides, then we will conclude that appellee engaged in a deceptive act or practice.[11]

---

[11] Actually, appellants assert that, in general, a court must consider the FTC endorsement guides when considering a celebrity endorsement case. In their merit brief, appellants state: "[Appellants] request this Court hold in CSPA cases involving celebrity endorsers, Ohio courts should use the factors for deceptive practices involving celebrity endorsers in the 2009 FTC rules and guides." In the interests of justice and in an abundance of interpretative caution, we have liberally construed their argument to be that if the FTC rules and guides apply, then appellee's statements violated those rules and guides and constituted deceptive acts or practices.

{¶ 47}  The FTC celebrity endorsement guides "represent administrative interpretations of laws enforced by the Federal Trade Commission for the guidance of the public in conducting its affairs in conformity with legal requirements."  16 C.F.R. 255.0(a).  The guides "provide the basis for voluntary compliance with the law by advertisers and endorsers" and "set forth the general principles that the [FTC] will use in evaluating endorsements and testimonials, together with examples illustrating the application of those principles."  Id.  The guides "are not binding law themselves." http://www.ftc.gov/opa/2009/10/endortest.

{¶ 48}  shtm.

{¶ 49}  Under the guides, "[w]hether a particular endorsement or testimonial is deceptive will depend on the specific factual circumstances of the advertisement at issue."  16 C.F.R. 255.0(a).  Section 255.1(a) provides the "[g]eneral considerations" that apply to endorsements and states: "Endorsements must reflect the honest opinions, findings, beliefs, or experience of the endorser.  Furthermore, an endorsement may not convey any express or implied representation that would be deceptive if made directly by the advertiser."

{¶ 50}  A celebrity may endorse a product or service "only so long as [the advertiser] has good reason to believe that the endorser continues to subscribe to the views presented."  Id. at (b).  Furthermore, if "the advertisement represents that the endorser uses the endorsed product, the endorser must have been a bona fide user of it at the time the endorsement was given."  Id. at (c).  An endorser "may be liable for statements made in the course of their endorsements."  Id. at (d).

{¶ 51}  In the case sub judice, we first question the applicability of the 2009 revised guides to the facts presented in the case sub judice.  The general presumption is that federal (as well as state) statutes and administrative rules operate prospectively, not retrospectively.  See Randolph v.

Grange Mut. Cas. Co., 185 Ohio App.3d 589, 602, 925 N.E.2d 149, 33, citing Bowen v.

Georgetown Univ. Hosp. (1988), 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493; see, also,

Landgraf v. USI Film Prods., 511 U.S. 244, 263-264, 114 S.Ct. 1483, 128 L.Ed.2d 229.   A statute

or rule applies retrospectively only when the legislature or administrative agency has expressed a

clear indication that the statute or rule applies retroactively.   See Johnson v. United States (2000),

529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727 ("Absent a clear statement of that intent, we

do not give retroactive effect to statutes burdening private interests.); Landgraf, 511 U.S. 272-273;

United States v. St. Louis, S.F. & T.R. Co., (1926), 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed.2d 435

(stating that "a statute shall not be given retroactive effect unless such construction is required by

explicit language or by necessary implication").   In the absence of a clear intent to apply a statute

or rule retroactively, a court must engage in "a sequence of analysis" to determine whether the

statute or rule should apply retroactively or prospectively.   Fernandez-Vargas v. Gonzales (2006),

548 U.S. 30, 37, 126 S.Ct. 2422, 165 L.Ed.2d 323.   First, the court must examine whether the

legislative or administrative body "'has expressly prescribed the statute's [or rule's] proper reach.'"

 Id., quoting Landgraf, 511 U.S. at 280.   When the statute or rule does not contain an express

intent regarding its "temporal reach," a court must "try to draw a comparably firm conclusion about

the temporal reach specifically intended by applying '[the] normal rules of construction.'" Id.,

quoting Lindh v. Murphy (1997), 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481.   If

applying the normal rules of construction fails to uncover the temporal reach, then the court must

"ask whether applying the statute [or rule] to the person objecting would have a retroactive

consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the

basis of] conduct arising before [its] enactment.'" Id., quoting Landgraf, 511 U.S. at 278.   "If the

answer is yes," the court must "apply the presumption against retroactivity * * *."   Id.

{¶ 52}   In the case at bar, the revised guides that appellants desire to apply were released for publication in October 2009 and made effective December 1, 2009.   However, our review of appellants' complaint reveals that their CSPA claim is based upon consumer transactions (i.e., their visits to Byers service department) that occurred before October 2009.   Appellants' complaint is based upon allegedly poor workmanship in service that they received between November 2004 through August or September 2009.   They state that by September 2009, they "refused to believe that [Byers is] competent" to correct the problems with their vehicle and they sought advice from legal counsel.   They have not made any claim that appellee's advertisements after October of 2009 influenced their decision to engage in a consumer transaction with Byers.   Moreover, they have not brought a claim under R.C. 1345.09(D), which allows a consumer to act as a "private attorney general" and to seek declaratory, injunctive, or other appropriate relief.   None of their claims are addressed to statements appellee made after appellants ceased their relationship with Byers.   Thus, any advertisements that featured appellee that appellants witnessed after September or October 2009 did not cause them to engage in a consumer transaction within the meaning of R.C. 1345.02(A).   See R.C. 1345.01(A) (defining "consumer transaction" as "a service * * * to an individual for purposes that are primarily personal, family, or household, or solicitation to provide any of these things").   Thus, because the revised guidelines became effective after appellants' consumer transactions, we must consider whether they apply retroactively or prospectively.

{¶ 53}   The guides do not contain a clear intent of retroactivity.   Moreover, the normal rules of construction do not clearly reveal whether the guides apply retroactively.   We thus consider whether applying the guides to appellee would affect his "substantive rights, liabilities, or

duties [on the basis of] conduct arising before [their] enactment." Landgraf, 511 U.S. at 278.

Applying the 2009 guides to appellee's advertisements that occurred before the guides were

published would affect his liability. Before the 2009 revised guides, endorsers were not held

liable for statements they made in advertisements.[12] The 2009 revised guides expressly provide

that an endorser may be liable. 16 C.F.R. 255.1(d). Thus, because applying the 2009 revised

guides affects appellee's liability, we employ the presumption against retroactivity and conclude

that in the case sub judice the guides apply prospectively. Consequently, appellants' claim that the

trial court erred by failing to consider the revised celebrity endorsement guides is without merit.

{¶ 54} Moreover, even if we were to conclude for purposes of argument that the FTC

revised endorsement guides apply to the case at bar, we would find that appellee did not engage in

---

[12] Before the December 2009 guides became effective, 16 C.F.R. 255.1 read:

(a) Endorsements must always reflect the honest opinions, findings, beliefs, or experience of the endorser. Furthermore, they may not contain any representations which would be deceptive, or could not be substantiated if made directly by the advertiser. * * *

(b) The endorsement message need not be phrased in the exact words of the endorser, unless the advertisement affirmatively so represents. However, the endorsement may neither be presented out of context nor reworded so as to distort in any way the endorser's opinion or experience with the product. An advertiser may use an endorsement of an expert or celebrity only as long as it has good reason to believe that the endorser continues to subscribe to the views presented. An advertiser may satisfy this obligation by securing the endorser's views at reasonable intervals where reasonableness will be determined by such factors as new information on the performance or effectiveness of the product, a material alteration in the product, changes in the performance of competitors' products, and the advertiser's contract commitments.

(c) In particular, where the advertisement represents that the endorser uses the endorsed product, then the endorser must have been a bona fide user of it at the time the endorsement was given. Additionally, the advertiser may continue to run the advertisement only so long as he has good reason to believe that the endorser remains a bona fide user of the product. * * *

This prior version did not include subsection (d), which is contained in the revised guides and which adds the provision that expressly holds endorsers liable.

an act or practice that violates those guides.   For appellee's statements to be subject to the

endorsement guides, his statements must constitute an "endorsement."   The guides define an

"endorsement" as "any advertising message * * * that consumers are likely to believe reflects the

opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser * * *."

The guides offer the following examples to help determine whether a statement constitutes an

"endorsement":

> "Example 1:   A film critic's review of a movie is excerpted in an
> advertisement.   When so used, the review meets the definition of an endorsement
> because it is viewed by readers as a statement of the critic's own opinions and not
> those of the film producer, distributor, or exhibitor.   Any alteration in or quotation
> from the text of the review that does not fairly reflect its substance would be a
> violation of the standards set by this part because it would distort the endorser's
> opinion. * * *
> Example 2:   A TV commercial depicts two women in a supermarket buying
> a laundry detergent.   The women are not identified outside the context of the
> advertisement.   One comments to the other how clean her brand makes her family's
> clothes, and the other then comments that she will try it because she has not been
> fully satisfied with her own brand.   This obvious fictional dramatization of a real
> life situation would not be an endorsement.
> Example 3: In an advertisement for a pain remedy, an announcer who is not
> familiar to consumers except as a spokesman for the advertising drug company
> praises the drug's ability to deliver fast and lasting pain relief.   He purports to
> speak, not on the basis of his own opinions, but rather in the place of and on behalf
> of the drug company.   The announcer's statements would not be considered an
> endorsement.
> Example 4:   A manufacturer of automobile tires hires a well-known
> professional automobile racing driver to deliver its advertising message in television
> commercials.   In these commercials, the driver speaks of the smooth ride, strength,
> and long life of the tires.   Even though the message is not expressly declared to be
> the personal opinion of the driver, it may nevertheless constitute an endorsement of
> the tires.   Many consumers will recognize this individual as being primarily a
> racing driver and not merely a spokesperson or announcer for the advertiser.
> Accordingly, they may well believe the driver would not speak for an automotive
> product unless he actually believed in what he was saying and had personal
> knowledge sufficient to form that belief.   Hence, they would think that the
> advertising message reflects the driver's personal views.   This attribution of the
> underlying views to the driver brings the advertisement within the definition of an

endorsement for purposes of this part.

      Example 5:   A television advertisement for a particular brand of golf balls shows a prominent and well-recognized professional golfer practicing numerous drives off the tee.   This would be an endorsement by the golfer even though she makes no verbal statement in the advertisement.

      Example 6: An infomercial for a home fitness system is hosted by a well-known entertainer.   During the infomercial, the entertainer demonstrates the machine and states that it is the most effective and easy-to-use home exercise machine that she has ever tried.   Even if she is reading from a script, this statement would be an endorsement, because consumers are likely to believe it reflects the entertainer's views.

      Example 7:   A television advertisement for a housewares store features a well-known female comedian and a well-known male baseball player engaging in light-hearted banter about products each one intends to purchase for the other.   The comedian says that she will buy him a Brand X, portable, high-definition television so he can finally see the strike zone.   He says that he will get her a Brand Y juicer so she can make juice with all the fruit and vegetables thrown at her during her performances.   The comedian and baseball player are not likely to be deemed endorsers because consumers will likely realize that the individuals are not expressing their own views."

**{¶ 55}** Of the foregoing examples, Example 4 bears the most similarity to appellee's statements.   One difference, however, is that appellee, unlike the race car driver, does not speak to the quality of Byers' service department–the consumer transaction upon which appellants' complaint is based.   Rather, as appellee asserts in his brief, he offers "laudatory factual statements regarding the * * * size of Byers."   Regarding Byers' service department, appellee simply states that Byers "services more vehicles than anyone in Central Ohio."   Appellee's statement contains no inference regarding his beliefs, finding, experience, or opinions concerning the quality of service one can expect when visiting the Byers' service department.   Moreover, his statement does not indicate that he actually uses the Byers service department.   Furthermore, unlike the Example 4 race car driver, appellee's status as a former college football player and current sports broadcaster bears no relationship to automobiles.   A reasonable consumer might believe that a race car driver

may possess special knowledge about tires.   We see no logical reason, however, why a reasonable consumer might believe that a former college football player and current television football analyst may possess any special knowledge about motor vehicles.   Thus, appellee's lone statement concerning Byers' service department is not an endorsement that would be subject to the FTC revised endorsement guides.

{¶ 56} Moreover, even if the revised guides do apply to appellee's statements, no genuine issues of material fact remain as to whether his statements complied with the guides.   The record contains no evidence whatsoever that appellee's statements (even if they are considered "endorsements") do not reflect his honest opinions, findings, beliefs, or experience.   During the trial court proceedings, appellants, despite ample opportunity to do so, did not challenge whether appellee honestly believes the statements that he made.   On appeal, appellants have not argued that appellee's statements do not reflect his honest opinions, findings, beliefs, or experience. Instead, they argue that genuine issues of material fact remain as to whether appellee "purchased a car from Byers, paid to have a car serviced by Byers, ever purchased products or services from Byers Auto, or obtain vehicles and service work as compensation for his advertising services." These might be relevant questions if the advertisements represented that appellee uses the endorsed product.   See 16 C.F.R. 255.1(c).   The advertisements, however, contain no indication that appellee uses Byers.   Instead, as we have already stated, the advertisements speak to the size and history of the Byers' dealership.

{¶ 57} Additionally, an endorser's failure to adhere to the revised guides does not ipso facto establish a deceptive act or practice within the meaning of the Ohio CSPA.   See Shumaker at ¶21.   This court previously rejected the argument that a violation of the FTC rules necessarily

results in a violation of the Ohio CSPA.   We stated:

> "[W]e reject Shumaker's contention that the CSPA automatically incorporates FTC rules into Ohio's definition of 'unfair or deceptive acts' so that an unfair act under the FTC is also automatically an unfair act under the CSPA.   We are to give federal rules great deference and weight, and if this case involved the failure to post the buyer's guide, we would have no difficulty in finding that act to be deceptive or unfair under Ohio law.   However, the dispositive issue in this case is not whether Hamilton violated the FTC's Used Motor Vehicle Trade Regulation Rule.   Clearly, it did.   Rather, we must decide whether Hamilton's failure to put its name and address on the back of the buyer's guide results in an unfair or deceptive act under Ohio's CSPA.   In performing that task, we may look to the federal law for guidance but need not slavishly incorporate every federal violation into Ohio's statutory scheme for protecting consumers. Nor are we constrained by the fact that the other Ohio appellate courts may have adopted the incorporation approach in this context.   Rather, we look to see whether the act complained of is 'marked by injustice, partiality, or deception, or it results in inequitable business dealings.' Walker, 164 Ohio App.3d 385, 2005-Ohio-6055, 842 N.E.2d 570, ¶25."

Shumaker at ¶21.

{¶ 58} Consequently, even assuming arguendo that appellee's statements do not comply with the FTC 2009 revised endorsement guides, we need not automatically conclude that appellee committed an Ohio CSPA unfair or deceptive practice.   Instead, our ultimate inquiry remains whether appellee's statements constitute an unfair or deceptive practice under Ohio law. Additionally, the FTC guides state that "[p]ractices inconsistent with these Guides may result in corrective action * * * if, after investigation, the Commission has reason to believe that the practices fall within the scope of conduct declared unlawful * * *."   Thus, under the FTC guides, a violation of the revised endorsement guides does not ipso facto establish a violation of 15 U.S.C. 45, which makes it unlawful to engage in "unfair or deceptive acts or practices."   Under federal law, therefore, the ultimate inquiry also remains whether the statements constitute an unfair or deceptive act or practice.   We have already concluded that appellee's statements do not amount to

a deceptive act or practice.

**{¶ 59}** Accordingly, based upon the foregoing reasons, we overrule appellants' first, second, and third assignments of error.

IV

**{¶ 60}** In their fourth, fifth, and sixth assignments of error, appellants assert that the trial court did not properly apply the law. We first observe that we find nothing in the record to indicate that the trial court improperly applied the law. Furthermore, at least some of appellants' arguments appear to be based upon their misinterpretation of the trial court's decision. Moreover, to the extent that the trial court arguably improperly applied the law, our de novo standard of review corrects any such errors.

**{¶ 61}** Accordingly, based upon the foregoing reasons, we overrule appellants' fourth, fifth, and sixth assignments of error.

V

**{¶ 62}** In their seventh assignment of error, appellants assert that the trial court erred by dismissing their civil conspiracy complaint.

**{¶ 63}** A civil conspiracy is "a malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863; quoting LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640; citing Minarik v. Nagy (1963), 8 Ohio App.2d 194, 196, 193 N.E.2d 280. Ohio law does not recognize civil conspiracy as an independent cause of action. See Minarik, 8 Ohio App.2d at 195-196.

Rather, to prevail upon a civil conspiracy claim, a plaintiff must demonstrate the existence of an underlying unlawful act. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, citing Gosden v. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481.

{¶ 64} In the case sub judice, we have determined that no genuine issues of material fact remain regarding appellants' CSPA claim and that appellee is entitled to judgment as a matter of law. Because appellants cannot demonstrate the existence of a viable underlying unlawful act, they cannot prevail upon a civil conspiracy claim. Consequently, the trial court did not err by entering summary judgment in appellee's favor regarding appellants' civil conspiracy claim.

{¶ 65} Accordingly, based upon the foregoing reasons, we overrule appellants' seventh assignment of error.

VI

CROSS-APPEAL

{¶ 66} In his cross-assignment of error, appellee asserts that the trial court abused its discretion by overruling his R.C. 1345.09(F)(1) motion for attorney fees.

{¶ 67} A trial court possesses discretion when determining whether to award R.C. 1345.09(F) attorney fees. See Charvat v. Ryan, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶27; McPhillips v. United States Tennis Assn. Midwest, Lake App. No. 2006-L-235, 2007-Ohio-3595, ¶20. An abuse of discretion implies that a trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Moreover, it "'involves far more than a difference in * * * opinion * * *.'" State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264, quoting Spalding v. Spalding (1959), 355 Mich. 382, 384-385, 94 N.W.2d 810; see, also, Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio

St.3d 83, 87, 482 N.E.2d 1248.   Rather, "'[t]he term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" Jenkins, 15 Ohio St.3d at 222, quoting Spalding.   Thus, "'[i]n order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *'"   Id., quoting Spalding. Moreover, when applying the abuse-of-discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court.   See, e.g., In re Jane Doe I (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

{¶ 68} R.C. 1345.09(F)(1) permits a trial court to award "to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if * * * [t]he consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith[.]"

{¶ 69} The statute does not mandate an attorney fee award even if the trial court determines that a CSPA claim is groundless and brought in bad faith.   See McCreery v. Atwood Motors Co., Tuscarawas App. No. 03AP080061, 2004-Ohio-3328, ¶15 (holding that trial court need not award R.C. 1345.09(F)(1) attorney fees even if the evidence clearly demonstrates that the supplier did not violate the CSPA).   Cf. Chavat at ¶27 (holding that trial court need not award R.C. 1345.09(F)(2) attorney fees even if it determines that supplier knowingly violated CSPA).   Furthermore, a trial court need not award attorney fees simply because it grants summary judgment to a CSPA supplier. Schwingle v. Stull, Harrison App. No. 07HA5, 2008-Ohio-3093, ¶27.

{¶ 70}  In the case at bar, we are unable to conclude that the trial court abused its discretion by denying cross-appellant's motion for attorney fees.   Even if we agree with cross-appellant that cross-appellees' CSPA claims against him are groundless, the trial court retained discretion to evaluate the facts of the case and to ascertain whether to award attorney fees.   Based upon the record before us, we can only conclude that the trial court properly exercised its discretion.

{¶ 71}  Accordingly, based upon the foregoing reasons, we overrule cross-appellant/appellee's cross-assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees/cross-appellants recover of appellants/cross-appellees the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele
Presiding Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.