[Cite as *Ferrise v. Spitzer Motors of Mansfield*, 2013-Ohio-4388.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOSEPH J. FERRISE | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13CA19 |
| | : | |
| SPITZER MOTORS OF MANSFIELD | : | |
| AND ALLY FINANCIAL, INC. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:             Appeal from the Mansfield Municipal
                                    Court, Case No. 2011-CVE-997


JUDGMENT:                           AFFIRMED


DATE OF JUDGMENT ENTRY:              September  27, 2013


APPEARANCES:

For Plaintiff-Appellant:                For Defendants-Appellees:

GREGORY S. REICHENBACH              ANTHONY B. GIARDINI
P.O. Box 256                        520 Broadway, 3rd Floor
Bluffton, OH 45817                  Lorain, OH 44052

                                    MATTHEW G. BURG
                                    323 Lakeside Ave., Suite 200
                                    Cleveland, OH 44113

*Delaney, J.*

{¶1} Plaintiff-Appellant Joseph J. Ferrise appeals the January 28, 2013 judgment entry of the Mansfield Municipal Court.

## FACTS AND PROCEDURAL HISTORY

{¶2} In October 2010, Plaintiff-Appellant Joseph Ferrise sought to replace his existing car with a pre-owned Dodge Magnum. Ferrise does not own a computer, but he borrowed a computer to do internet research on the availability of the vehicle.

{¶3} In September 2010, a private owner traded in a 2007 Dodge Magnum to Defendant-Appellee Spitzer Motors of Mansfield, Inc., located in Mansfield, Ohio. When Spitzer Motors took the vehicle in trade, the Dodge Magnum had approximately 75,000 miles on the odometer. The private owner owned the 2007 Dodge Magnum from December 2007 to September 2010 and put 50,000 miles on the vehicle.

{¶4} On September 21, 2010, Spitzer Motors ran a Carfax report on the 2007 Dodge Magnum. Spitzer Motors contracts with Carfax to provide vehicle service and history reports to Spitzer Motors and its customers for the used vehicles for sale by Spitzer Motors. Spitzer Motors includes a Carfax report in its vehicle sales files for review by its customers. Customers can also access a free Carfax report on Spitzer's website for used vehicles for sale. As to the Dodge Magnum, the Carfax report lists a first owner of the Dodge Magnum as "Rental." Prior to the second private owner of the vehicle, the Dodge Magnum was owned by Rental Car Finance Corp. The vehicle was owned by Rental Car Finance Corp. from January 18, 2007 to September 2007 and it was driven for 25,000 miles.

{¶5} Ferrise saw the 2007 Dodge Magnum on Spitzer's lot and he decided to test drive the vehicle. During Ferrise's first test drive of the Dodge Magnum, Ferrise asked the Spitzer salesperson about the history of the vehicle. The salesperson said the vehicle had a "clean Carfax." Ferrise understood a "clean Carfax" to mean there was nothing on the Carfax, such as that the car was wrecked. Ferrise did not ask to see the Carfax report himself.

{¶6} On November 12, 2010, Ferrise purchased the Dodge Magnum for $11,000. Ferrise and Spitzer Motors signed a Pre-Owned Vehicle Buyer's Agreement. The Pre-Owned Vehicle Buyer's Agreement is a form that includes a box to check whether the used vehicle is a rental. Spitzer Motors did not check the box to mark the Dodge Magnum was previously a rental vehicle. Ferris also signed a Retail Installment Sale Contract. Spitzer Motors assigned its interest in the Retail Installment Sale Contract to Defendant-Appellee Ally Financial, Inc. At the conclusion of the transaction, Spitzer Motors provided Ferrise with a folder containing the sales contract documents, including a copy of the September 21, 2010 Carfax report. Ferrise did not look at the Carfax report or the sales documents.

{¶7} A few days after the purchase, Ferrise's neighbor asked to look at the Carfax report. Ferrise's neighbor noticed the Carfax report listed the car as previously owned by a rental car company.

{¶8} Ferrise made $1,500 in payments under the installment contract. In April 2011, Ferrise stopped making payments pursuant to the installment sale contract. Ferrise did not stop driving the Dodge Magnum, however; he has put approximately 16,000 miles on the car since his purchase of the vehicle. Ferrise has not had any

problems with the car since its purchase. He has only done regular maintenance on the car, such as oil changes.

{¶9} On April 19, 2011, Ferrise filed a complaint in the Mansfield Municipal Court against Spitzer Motors and Ally Financial. The complaint sought declaratory relief and rescission of the purchase contract for a used vehicle under the Consumer Sales Practices Act, and alleged fraudulent misrepresentation by Spitzer, and that Ally Financial was derivatively liable by written agreement and as the holder of a consumer contract. The basis of Ferrise's claims was Spitzer Motors' failure to notify Ferrise the Dodge Magnum was previously owned by a rental car company. Ferrise alleged he would not have purchased the Dodge Magnum if he had known it was previously used as a rental car. Ally Financial filed a counterclaim against Ferrise for the balance of the installment contract.

{¶10} The parties filed cross-motions for summary judgment. The trial court denied the motions. A bench trial was held before the magistrate on April 24, 2012. The magistrate filed his findings of fact and conclusions of law on May 8, 2012, recommending judgment in favor of Spitzer Motors and Ally Financial. The magistrate found that while the evidence showed the Dodge Magnum was *owned* by Rental Car Finance Corp., Ferrise did not present any evidence the car was *used* as a rental vehicle or Spitzer Motors had any knowledge the car was *used* as a rental vehicle as defined by the Ohio Administrative Code. Ferrise filed objections to the decision. On January 28, 2013, the trial court adopted the magistrate's decision and entered judgment.

{¶11} It is from this decision Ferrise now appeals.

**ASSIGNMENTS OF ERROR**

{¶12} Ferrise raises two Assignments of Error:

{¶13} "I. THE TRIAL COURT ERRED BY DENYING PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶14} "II. THE TRIAL COURT ERRED BY DETERMINING THAT THE WEIGHT OF THE EVIDENCED AT TRIAL SUPPORTED ENTERING JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES AND AGAINST PLAINTIFF-APPELLANT ON PLAINTIFF-APPELLANT'S CLAIM UNDER THE CONSUMER SALES PRACTICES ACT AND DEFENDANTS-APPELLEES' COUNTERCLAIMS."

**ANALYSIS**

*II.*

{¶15} We will first address Ferrise's second Assignment of Error because it is dispositive of the appeal. Ferrise argues in his second Assignment of Error the trial court's decision to grant judgment in favor of Spitzer Motors and Ally Financial was against the manifest weight of the evidence. We disagree.

{¶16} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911 (February 10, 1982). In *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179, the Ohio Supreme Court reiterated its "manifest weight" standard for civil cases taken from *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). According to *Thompkins:* "Weight of the evidence concerns 'the inclination of the *greater amount of*

*credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* (6th Ed.1990) at 1594. The Ohio Supreme Court also reiterated: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley* at 334, 972 N.E.2d 517, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

{¶17} Ferrise brought his action against Spitzer Motors and Ally Financial based on violations of the Consumer Sales Practices Act, R.C. Chapter 1345 ("CSPA") and common law fraud.

### CSPA

{¶18} R.C. 1345.02(A) sets forth the general prohibition against unfair or deceptive acts or practices:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

In this case, the parties stipulated Spitzer Motors is a "supplier" and Ferrise is a "consumer." R.C. 1345.01(C), (D).

{¶19} R.C. 1345.02(B) contains a non-exhaustive list of specific acts that constitute deceptive acts or practices:

Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

(3) That the subject of a consumer transaction is new, or unused, if it is not;

(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;

(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

(7) That replacement or repair is needed, if it is not;

(8) That a specific price advantage exists, if it does not;

(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;

(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

{¶20} Because the CSPA "is a remedial law which is designed to compensate for traditional consumer remedies," a court must liberally construe it. *Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, ¶ 26 citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990).

{¶21} The Ohio Administrative Code also sets forth rules for the advertisement and sale of motor vehicles and what can be considered a deceptive and unfair act. Relevant to the issues in the present case, Ohio Adm.Code 109:4-3-16(B) states:

(B) It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement or sale of a motor vehicle, to:

* * *

(3) Use any statement, layout, or illustration in any advertisement or sales presentation which could create in the mind of a reasonable consumer a false impression as to any material aspect of said advertised or offered vehicle, or to convey or permit an erroneous impression as to which vehicles are offered for sale at which prices;

* * *

(15) Fail to disclose prior to the dealer's requiring signature by the consumer on any document for the purchase or lease of the vehicle, the fact that said vehicle has been previously used as a demonstrator, factory official vehicle or rental vehicle. The above disclosure is required when such is known by the dealer.

{¶22} "Rental vehicle" is defined by Ohio Adm.Code 109:4-3-16(A)(10) as, "* * * a motor vehicle which has been operated for hire by an entity which is engaged in the business of renting vehicles, and includes daily rentals of dealers."

{¶23} With the above statutory and administrative regulations as our guide, we consider the evidence presented in this case to determine whether the decision of the trial court was supported by the evidence. Ferrise presented three pieces of evidence to establish the prior ownership history of the 2007 Dodge Magnum.

{¶24} First, Ferrise introduced stipulated Exhibit 1-B, the Carfax report. The Carfax report stated "Owner 1" purchased the Dodge Magnum in 2007 and listed "Rental" as the type of owner. The Carfax glossary defines "rental" as a vehicle "registered by a rental agency." The Carfax reports the estimated length of ownership by Owner 1 was from January 18, 2007 to September 12, 2007, with the last reported odometer reading as 25,036. The Carfax report states, "CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION, THEREFORE, NO RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR ERROR OR OMISSIONS IN THIS REPORT. CARFAX FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED

WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."

{¶25} Second, Ferrise introduced the Certificate of Title issued for the Dodge Magnum on February 24, 2007. It lists the owner as "Rental Car Finance Corp." located in Indianapolis, Indiana.

{¶26} Third, Ferrise relies on the testimony of Michael Gremmer, Spitzer Motors' finance director. On cross-examination, Gremmer testifies that as of the date of the bench trial, Gremmer knew the Dodge Magnum was a rental car. (T. 115). On direct examination, Gremmer testifies at the time of the sale, he did not know the Dodge Magnum was a rental because he did not review the Carfax report. (T. 110).

{¶27} Ohio Adm.Code 109:4-3-16(B)(3) states it is an unfair and deceptive practice for a dealer to "[f]ail to disclose prior to the dealer's requiring signature by the consumer on any document for the purchase or lease of the vehicle, the fact that said vehicle has been *previously used as* a demonstrator, factory official vehicle or *rental vehicle*. The above disclosure is required when such is known by the dealer." (Emphasis added.) Ohio Adm.Code further defines a rental vehicle as "a motor vehicle which *has been operated for hire* by an entity which is engaged in the business of renting vehicles, and includes daily rentals of dealers." (Emphasis added.) The trial court held Ferrise established Rental Car Finance Corp. was a prior owner of the Dodge Magnum. The trial court held, however, Ferrise failed to present credible evidence the Dodge Magnum was previously used or operated as a rental vehicle. Ferrise did not present evidence as to the use of the Dodge Magnum while owned by Rental Car Finance Corp. The record established in this case supports the trial court's conclusion.

{¶28} Ferrise next argues Spitzer Motors violated Ohio Adm.Code 109:4-3-16(B)(3) by using false statements in its sales presentation to create in the mind of Ferrise, the reasonable consumer, a false impression as to any material aspect of the offered vehicle. Ferrise states by saying the Dodge Magnum had a "clean Carfax" and by failing to check the box marked "rental" on the Buyer's Agreement, Spitzer Motors created a false impression as to a material aspect of the Dodge Magnum – that it was previously used as a rental vehicle. As stated above, there was no evidence presented the car was used as a rental vehicle, other than it was owned by Rental Car Finance Corp. As to a false impression, when Ferrise testified when he was told the Carfax was "clean," he understood the meaning of a "clean Carfax" to be that the Dodge Magnum had not been in an accident. The Dodge Magnum had not been in an accident.

{¶29} Ferrise relies heavily on Ohio Adm.Code 109:4-3-16 to establish his case under the CSPA. The evidence in the case fails to meet the standards in the Code as to whether the Dodge Magnum was previously used as a rental vehicle, so as to be a deceptive and unfair act by Spitzer Motors.

Common Law Fraud

{¶30} Ferrise also brought a common law claim of fraudulent misrepresentation. To prove a common law claim of fraud, a plaintiff must establish the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (2) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury

proximately caused by the reliance. *Burr v. Stark County Board of Commissioners,* 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶31} The elements of fraud must be established by clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). The burden to prove fraud rests upon the party alleging the fraud. *First Discount Corp. v. Daken,* 75 Ohio App. 33, 60 N.E.2d 711 (1st Dist.1944), paragraph seven of the syllabus.

{¶32} The magistrate's decision concluded Ferrise failed to prove Spitzer Motors committed fraud. (Magistrate's Decision, May 8, 2012, Conclusion of Law 8.) Ferrise does not assign as error in his appellate brief the trial court's decision as to common law fraud. As such, we will not address the issue of common law fraud pursuant to App.R. 16.

{¶33} The decision of the trial court as to Ferrise's claim under the CSPA was supported by competent and credible evidence. The Ohio Supreme Court held, "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley* at 334, 972 N.E.2d 517. Ferrise's second Assignment of Error is overruled.

I.

{¶34} Ferrise argues in his first Assignment of Error the trial court erred in denying his motion for summary judgment. Based on our conclusion as to the second

Assignment of Error, we find no error for the trial court to find a genuine issue of material fact for trial.

{¶35} Ferrise's first Assignment of Error is overruled.

## CONCLUSION

{¶36} The first and second Assignments of Error of Plaintiff-Appellant Joseph J. Ferrise are overruled.

{¶37} The judgment of the Mansfield Municipal Court is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.


HON. PATRICIA A. DELANEY


HON. SHEILA G. FARMER


HON. JOHN W. WISE