[Cite as *Anderson v. Discount Drug Mart, Inc.*, 2021-Ohio-693.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HOLLEE J. ANDERSON,  :

    Plaintiff-Appellant,  :  No. 109811

    v.  :

DISCOUNT DRUG MART, INC.,  :

    Defendant-Appellee.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 11, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-909754

---

### *Appearances:*

Cavitch, Familo & Durkin Co., L.P.A., Timothy D. Johnson
and Robert A. West, Jr., *for appellee.*

Jeremy Gilman, Attorney, L.L.C., and Jeremy Gilman and
Harvey & Abens Co., L.P.A., and Matthew B. Abens, *for
appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Hollee Anderson appeals from the trial court's order granting the motion for summary judgment filed by defendant-appellee Discount Drug Mart, L.L.C. ("Discount Drug Mart") and denying her motion for

summary judgment on her complaint for declaratory and injunctive relief under the Ohio Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345.

{¶ 2} Finding no merit to the appeal, we affirm the trial court.

**Procedural and Factual Background**

{¶ 3} Discount Drug Mart is a full-service drug store that operates more than 70 retail stores in Ohio, including more than a dozen stores in Cuyahoga County. On January 17, 2019, Anderson filed a complaint in the Cuyahoga County Court of Common Pleas seeking declaratory and injunctive relief under the CSPA based on allegations that Discount Drug Mart's multiple-unit pricing promotions — e.g., ten for $10 — misrepresent that "a specific price advantage exists" when "it does not," constituting a deceptive act or practice under R.C. 1345.02(A) and 1345.02(B)(8).

{¶ 4} In her complaint, Anderson alleged that Discount Drug Mart represented to consumers, "through printed and online weekly ads and in-store signage" advertising its multiple-unit pricing promotions, that if they purchased a specific number of units of a particular product during the time the promotion was running, they would receive a specific discount on that number of units, i.e., that a "specific price advantage" existed to purchasing the specific number of units advertised. The complaint alleged that, "[i]n actuality," the "specific price advantage" advertised "did not exist" because a consumer could have paid "the same proportionate discounted price" if they purchased fewer quantities of the advertised product during the promotion period. The complaint further alleged that "[b]y

representing that a specific price advantage existed to buying [the specific number of units advertised] when no such specific price advantage actually existed," Discount Drug Mart had engaged in unfair or deceptive acts or practices in connection with consumer transactions in violation of R.C. 1345.02(A).

{¶ 5} The complaint included several examples of multiple-unit pricing promotions from Discount Drug Mart's weekly ads and alleged that Discount Drug Mart "has planned, advertised and implemented hundreds, if not thousands, of analogous price promotions for many different products over the years, including during 2017 and 2018, and continues to do so." One such example involved a sale on PictSweet Simple Harvest frozen vegetables that ran from November 14, 2018 through November 20, 2018:

> 7. One of the price promotions identified on * * * [Discount Drug Mart's] weekly ad is that between November 14, 2018 and November 20, 2018, [Discount Drug Mart] was selling 10 12-ounce bags of assorted PictSweet Simple Harvest vegetables for $10.00 and that consumers would "Save 9.90 On 10."
>
> 8. In this weekly ad, [Discount Drug Mart] represented to consumers that a specific price advantage existed to their buying 10 bags of those vegetables during this price promotion; namely, they would "save 9.90 on 10."
>
> 9. In actuality, however, this specific price advantage did not exist, because consumers shopping at [Discount Drug Mart] stores while this price promotion was running could have paid the same proportionate discounted price of $1.00 per bag for those same vegetables even if they had bought fewer than 10 bags of them from [Discount Drug Mart] during that time.
>
> 10. They could, for example, have obtained the same price advantage had they bought seven bags, or three bags, or one bag of those vegetables from [Discount Drug Mart] during that time.

11. [Discount Drug Mart], however, failed to inform consumers that they could have obtained the same price advantage had they bought fewer than 10 bags of those vegetables during this price promotion.

12. Instead, [Discount Drug Mart] represented to consumers that a specific price advantage only existed if they bought 10 bags of those vegetables from [Discount Drug Mart] during this price promotion.

{¶ 6} The complaint did not allege that Anderson had seen any of the advertisements described in the complaint, that she had made any multiple-unit purchases based on Discount Drug Mart's multiple-unit pricing promotions or that she (or anyone else) had been misled or deceived by any of Discount Drug Mart's multiple-unit pricing promotions.

{¶ 7} Anderson requested that the trial court (1) issue an order declaring that, by engaging in these types of multiple-unit pricing promotions, Discount Drug Mart "has committed, and continues to commit, unfair or deceptive acts or practices in connection with consumer transactions in violation of R.C. 1345.02(A)," (2) issue a permanent injunction enjoining Discount Drug Mart from committing "the unfair or deceptive acts or practices" described in her Complaint and (3) award her attorney fees and costs.

{¶ 8} Discount Drug Mart filed an answer, admitting that the "reduced price" in the multiple-unit pricing promotions identified in Anderson's complaint "was applicable to the item irrespective of the quantity purchased by a consumer during the applicable time period." However, Discount Drug Mart denied that it had engaged in, or was engaging in, any unfair or deceptive acts or practices in

connection with its sales promotions and asserted that the advertisements at issue were "truthful" and "non-deceptive." Discount Drug Mart also raised various affirmative defenses.

{¶ 9} During discovery, Anderson conducted the deposition of David Bergman, Discount Drug Mart's vice president of advertising. Bergman, who had worked at Discount Drug Mart for 30 years, was produced for deposition in response to a Civ.R. 30(B)(5) deposition notice as Discount Drug Mart's designee. Bergman testified that Discount Drug Mart regularly runs multiple-unit pricing promotions, which he described as "two for, three for, four for, five for" promotions, and that it advertises these promotions online and in weekly circulars, which are mailed to potential customers through a flyer distribution service. He indicated that when advertising its multiple-unit pricing promotions, Discount Drug Mart states the total cost and total savings that would apply if a customer were to purchase a specific number or "multiple" of a given product at the then-discounted unit price — e.g., 10 for $10, resulting in a savings of $9.90 on 10, for a product with a regular price of $1.99 per unit.

{¶ 10} Bergman testified that under Discount Drug Mart's multiple-unit pricing promotions, customers pay the same pro-rata discount price per unit during the promotion period regardless of the quantity of units purchased. In other words, Discount Drug Mart does not require customers to purchase the specific multiple of units identified in the multiple-unit pricing promotion in order to receive the

discounted price; customers pay the same discounted price per unit regardless of the quantity of units purchased.

{¶ 11} During his deposition, when questioned regarding a multiple-unit pricing promotion on 12-ounce bags of PictSweet Simple Harvest frozen vegetables that ran from November 14, 2018 through November 20, 2018, Bergman explained specifically how Discount Drug Mart's multiple-unit pricing promotions work:

> Q. * * * Between November 14, 2018 and November 20, 2018, [Discount Drug Mart] was selling ten 12-ounce bags of those PictSweet Simple Harvest vegetables for $10, and [stating] that consumers would save $9.90 on ten units of those vegetables, correct, ten bags of those vegetables?
>
> A. That's correct.
>
> Q. That means that the unpromoted price of those vegetables was how much per bag?
>
> A. $1.99, outside of the window stated.
>
> * * *
>
> Q. All right. Now, would you agree with me that [Discount Drug Mart] represented to consumers in its weekly ad that between November 14, 2018 and November 20, 2018, [Discount Drug Mart] was selling ten 12-ounce bags of these PictSweet Harvest vegetables for $10, and that consumers that week would save $9.90 on ten bags?
>
> A. That's correct.
>
> * * *
>
> Q. [I]f a [Discount Drug Mart] customer, during the time period that that price promotion was pending, bought at [Discount Drug Mart], for example, seven bags of those PictSweet Simple Harvest vegetables instead of ten, how much would she or he have paid for those seven bags of vegetables?

A.      $7.

Q.      And what about if they bought four bags during that promotion period, how much would he or she have paid?

A.      $4.

Q.      And what if they bought two bags instead of ten?

A.      $2.

Q.      What about if they bought a single bag of those vegetables instead of ten?

A.      $1, and the savings would be proportionate from 9.90, $9.90 down to .99, in your examples.

Q.      So consumers would have bought any quantity of bags of those PictSweet vegetables, during that promotion period, for a dollar a bag and didn't have to get ten bags of those vegetables to reap the economic benefit of the promotion; is that correct?

A.      That's correct.

* * *

Q.      * * * In this weekly ad * * * did [Discount Drug Mart] inform consumers that they would have been able to derive the same price advantage had they bought fewer than ten bags of those vegetables during that time?

* * *

A.      No.

Q.      Did consumers shopping at [Discount Drug Mart], during the time this promotion was pending, derive a specific price advantage from buying ten bags of these PictSweet vegetables during the price promotion?

A.      They went home with $9.90 less [sic] than they would have paid outside of the promotional window.

Q.     Was there a specific price advantage to consumers from buying ten bags, as opposed to * * * buying four bags or two bags or one bag?

[Defendant's counsel]:  Objection.  Go ahead.

A.     Savings was proportionate.

Q.     My question to you was, was there a specific price advantage to consumers during the week this price promotion was running * * * to their buying ten bags of these vegetables as opposed to any other quantity?

[Defendant's counsel]:  Objection.  Go ahead.

A.     No.

{¶ 12}  Bergman testified that in addition to advertising multiple-unit pricing promotions online and in its weekly circulars, Discount Drug Mart also uses in-store "temporary price reduction tags" ("TPR tags") that are placed next to a product's regular-price shelf tag, "signifying the difference in price during the promotion between that same merchandise and the regular price of the item."  These TPR tags typically display the temporarily reduced, multiple-unit promoted price and the total cost savings — e.g., buy 3 units of a product for $Y and "save X dollars on three."

{¶ 13}  Bergman acknowledged that Discount Drug Mart does not specifically inform customers, in its multiple-unit pricing promotions, that they will receive the same pro-rata discount per unit on products purchased during the promotion period regardless of the quantity of units purchased.  However, he indicated that "[w]hen there is a mandatory buy level" under one of Discount Drug Mart's promotions, that fact is expressly stated.  In such cases, "[y]ou get the single unit price buying less."

{¶ 14} Bergman testified that Anderson was a "regular customer" at Discount Drug Mart's Strongsville store, that she had a "Courtesy Plus" card for Discount Drug Mart's loyalty program and that she had previously purchased goods for her or her family's use from Discount Drug Mart. However, there is no evidence in the record that Anderson ever purchased any products from Discount Drug Mart that were part of Discount Drug Mart's multiple-unit pricing promotions, that she (or anyone else) was falsely led to believe, based on Discount Drug Mart's multiple-unit pricing promotions, that customers needed to purchase the specific multiple of units identified in the promotion in order to receive the discounted sales price or that she (or anyone else) was "duped" into purchasing multiple units of any product that was part of a multiple-unit pricing promotion, believing that it was the only way to receive the discounted sales price for such product.

{¶ 15} On September 6, 2019, both parties filed motions for summary judgment. In its motion for summary judgment, Discount Drug Mart asserted that it was entitled to judgment as a matter of law on Anderson's complaint because: (1) there was no evidence from which a reasonable jury could find that Discount Drug Mart's multiple-unit pricing promotions were untruthful or would mislead a reasonable consumer; (2) Ohio law did not require Discount Drug Mart to specifically state in its multiple-unit pricing promotions that consumers would receive the discounted price if they purchased fewer quantities than the specific multiple of units identified in the promotion; (3) Anderson's claims ignored the "plain language and meaning" of Ohio Adm.Code 109:4-3-02 and (4) the Cuyahoga

County Court of Common Pleas had recently granted summary judgment in favor of the defendant in a case involving claims, *Grgat v. Giant Eagle, Inc.*, Cuyahoga C.P. CV-18-892339, which was later appealed to this court. In support of its motion for summary judgment, Discount Drug Mart submitted copies of: (1) its answers to Anderson's request for admissions, (2) excerpts from the deposition of David Bergman, Discount Drug Mart's Civ.R. 30(B)(5) designee and (3) the complaint and the trial court's decision in *Grgat v. Giant Eagle, Inc.*, Cuyahoga C.P. CV-18-892339.[1]

{¶ 16} In her motion for summary judgment, Anderson argued that it was undisputed that (1) Discount Drug Mart represented to consumers in its weekly circulars and on TPR tags that they would derive a "specific price advantage" if they purchased the specific multiple of units advertised in its multiple-unit pricing promotions; (2) consumers, in fact, derived no "specific price advantage" by purchasing the specific multiple of units advertised because they would receive the same proportionate discount regardless of the number of units purchased during the promotion period and (3) Discount Drug Mart failed to inform consumers that they did not have to buy the multiple specified in its multiple-unit pricing promotions in order to receive the proportionate price advantage advertised. Based on these undisputed facts, Anderson argued that Discount Drug Mart's multiple-

[1] Discount Drug Mart also submitted an affidavit from Bergman in support of its motion for summary judgment. The trial court later granted Anderson's motion to strike the affidavit. Discount Drug Mart has not challenged that ruling. Accordingly, we do not consider that affidavit in our de novo review here.

unit pricing promotions were deceptive "as a matter of law" under R.C. 1345.02(B)(8), that Discount Drug Mart had, therefore, violated R.C. 1345.02(A) and that Anderson was entitled to declaratory and injunctive relief under R.C. 1345.09(D) and an award of her attorney fees under R.C. 1345.09(F)(2).

{¶ 17} In support of her motion for summary judgment, Anderson submitted copies of: (1) excerpts from Bergman's deposition, (2) excerpts from Discount Drug Mart's weekly advertising circulars and (3) her Civ.R. 30(B)(5) deposition notice to Discount Drug Mart.

{¶ 18} On October 17, 2019, the trial court granted Discount Drug Mart's motion to stay the case, pending the outcome of this court's decision in *Grgat v. Giant Eagle, Inc.* On November 7, 2019, after this court issued its decision in *Grgat v. Giant Eagle, Inc.*, 2019-Ohio-4582, 135 N.E.3d 846 (8th Dist.), Discount Drug Mart filed a motion to lift the stay and a notice of "supplemental binding authority," arguing that "the outcome of the appeal in the *Grgat* matter is binding legal precedent that dictates a similar outcome in the present matter." Anderson agreed that the stay should be lifted but argued that because "[t]he evidence adduced in this case differs from that which was adduced in *Grgat*, and the summary judgment motions filed in *Grgat* differ from the one filed by [Discount Drug Mart] here," *Grgat* did not control the result in this case.

{¶ 19} The trial court lifted the stay and, on November 21, 2019, issued journal entries granting Discount Drug Mart's motion for summary judgment and

denying Anderson's motion for summary judgment, without an opinion. Anderson appealed.

{¶ 20} This court, sua sponte, dismissed the appeal for lack of a final, appealable order, noting that the complaint was filed "as a declaratory judgment pursuant to R.C. 1345.09(D)" and that "[a] trial court does not fulfill its function in a declaratory judgment action when it fails to construe the documents at issue and further fails to declare the rights and duties of the parties by simply granting summary judgment on behalf of a party."

{¶ 21} On June 16, 2020, Anderson filed a motion with the trial court requesting that it state the basis for its decision on the parties' summary judgment motions and declare the parties' rights. The trial court granted the motion. On July 7, 2020, the trial court issued a journal entry in which it stated that "[b]ased upon the evidence presented, the Court does not find that Discount Drug Mart's multiple-unit pricing promotions violate R.C. 1345.02(B)(8)." The trial court explained:

> The Ohio Consumer Sales Practices Act defines unfair or deceptive consumer sales practices as those that mislead consumers about the nature of the product they are receiving. * * * In order to be "deceptive" under the OCSPA, the act or practice in question must be both false and material to the consumer transaction. * * * A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is not deceptive within the meaning of the OCSPA. * * *
>
> Plaintiff does not dispute that the discount is available to a consumer who buys more or less than the stated units. By displaying a price as "10 for $10" or "2 for $5," Discount Drug Mart does not misrepresent the sale price as displayed because it charges the proportionate sale

price at checkout. It is undisputed that the consumer receives the multiple unit discount on any amount of units purchased with no minimum or maximum purchase required. Plaintiff fails to satisfy the element of falsity to prove that Discount Drug Mart's multiple-unit pricing as displayed on the shelf tags adjacent to the promotional product is deceptive under the [OCSPA]. * * *

As there is no minimum or maximum amount required to be purchased to receive the advertised promotional price, there is no requirement that Discount Drug Mart do more.

* * * In construing the evidence most strongly in plaintiff[']s favor, the Court finds that reasonable minds can come to but one conclusion that [p]laintiff has failed to establish that the challenged price promotions violate the [OCSPA].

{¶ 22} Once again, Anderson appealed, raising the following two assignments of error for review:

Assignment of Error No. 1:
The trial court erred by granting Defendant-Appellee Discount Drug Mart, Inc.'s summary judgment motion.

Assignment of Error No. 2:
The trial court erred by denying Plaintiff-Appellant Hollee J. Anderson's summary judgment motion.

**Law and Analysis**

**Standard of Review**

{¶ 23} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 24} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 25} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. If the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

**Deceptive Act or Practices under the CSPA**

{¶ 26} The CSPA prohibits suppliers from committing unfair, deceptive or unconscionable acts or practices in connection with consumer transactions. R.C. 1345.02 and 1345.03. R.C. 1345.02(A) states:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

"Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter." R.C. 1345.09(D).

{¶ 27} A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). A "consumer" is "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A "consumer transaction" is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

{¶ 28} The parties do not dispute that Discount Drug Mart is a "supplier," that Anderson is a "consumer" or that the representations at issue were made "in connection with a consumer transaction" within the meaning of R.C. 1345.01(A), (C), (D) and 1345.02(A).

{¶ 29} "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24. Whether a supplier's act or omission violates the CSPA "depends on how a reasonable consumer would view it." *Grgat*, 2019-Ohio-4582, 135 N.E.3d 846, at ¶ 18. "[A] deceptive act 'has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" *Chesnut v. Progressive Cas. Ins. Co.*,

166 Ohio App.3d 299, 2006-Ohio-2080, 850 N.E.2d 751, ¶ 23 (8th Dist.), quoting *McCullough v. Spitzer Motor Ctr., Inc.*, 8th Dist. Cuyahoga No. 64465, 1994 Ohio App. LEXIS 262, 23 (Jan. 27, 1994); *see also Barlow v. Gap, Inc.*, 8th Dist. Cuyahoga No. 109101, 2020-Ohio-4382, ¶ 23-24.

{¶ 30} For conduct to be "deceptive" under the CSPA, it "must be both false and material to the consumer transaction." *Grgat* at ¶ 15-16; *see also Barlow* at ¶ 25-26. As this court explained in *Grgat*:

> Although R.C. 1345.02 does not use the word "falsity" or "false," each and every deceptive practice listed in the R.C. 1345.02 describes a misrepresentation of the truth, i.e., a falsity. * * * [F]alsity is the essence of deception. * * *

*Grgat* at ¶ 15. Likewise, with respect to materiality,

> [a]lthough R.C. 1345.02 does not explicitly state that misrepresentations must be material to the transaction, it is well established that a deceptive act or practice under the CSPA is one that "'has the tendency or capacity to mislead consumers concerning a fact or circumstance *material* to a decision to purchase the product or service offered for sale.'" (Emphasis added.) *Richards v. Beechmont Volvo*, 127 Ohio App.3d 188, 711 N.E.2d 1088 (1st Dist.1998), quoting *Cranford v. Joseph Airport Toyota, Inc.*, 2d Dist. Montgomery No. 15408, 1996 Ohio App. LEXIS 2252 (May 17, 1996). *See also Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, ¶ 29. * * *
>
> "In order to be deceptive, and therefore actionable, a [supplier's] act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved. A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not 'deceptive' within the meaning of the [the CSPA] * * *."
>
> *Davis* at ¶ 29, quoting *Cranford*. Therefore, * * * in order to be "deceptive" under the CSPA, the act or practice in question must be both false and material to the consumer transaction.

*Grgat* at ¶ 16.

{¶ 31} R.C. 1345.02(B) sets forth a nonexhaustive list of representations by a supplier that constitute deceptive acts or practices.  R.C. 1345.02(B)(8) states that a supplier engages in a deceptive act or practice if it "represent[s]" "[t]hat a specific price advantage exists, if it does not."  *See also Grgat* at ¶ 19; *Martin v. Lamrite West, Inc.*, 8th Dist. Cuyahoga No. 102251, 2015-Ohio-3585, ¶ 3 ("R.C. 1345.02(B)(8) makes it a deceptive act in a consumer transaction for a supplier to represent 'that a specific price advantage exists, if it does not.'").  In addition, R.C. 1345.05(B)(2) authorizes the Ohio attorney general to "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate [R.C.] 1345.02."  Ohio Adm.Code 109:4-3-02, adopted pursuant to that authority, states, in relevant part:

> (A)(1) It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability, that the terms of the offer might be misunderstood.
>
> (2) The following are examples of the types of material exclusions, reservations, limitations, modifications, or conditions of offers which must be clearly stated:
>
> * * *
>
> (g) If there is a minimum amount (or maximum amount) that must be purchased for the advertised price to apply, that fact must be stated.

**{¶ 32}** Whether a particular act or practice is deceptive is ordinarily an issue of fact; however, "when the evidence plainly reveals that a reasonable jury could not find that the act or practice misled a reasonable consumer, * * * whether a defendant engaged in a deceptive act or practice may be determined as a matter of law." *Davis,* 2012-Ohio-882, at ¶ 27.

**{¶ 33}** As detailed above, the material facts in this case are undisputed. Discount Drug Mart regularly uses multiple-unit pricing promotions when advertising its sales to consumers. Although Discount Drug Mart's advertisements and TPR tags state the promotion price and savings in terms of multiple units, the consumer receives the same pro-rata discount on items purchased during the promotion period regardless of the quantity purchased; i.e., there is no minimum number of units a customer must purchase in order to receive the pro-rata discounted sales price. In other words, if a customer purchases one unit during the promotion period, the customer would pay the same discounted price per unit as the customer would pay if he or she were to purchase the multiple of units specified in the advertisement (or any other quantity of the advertised product) during the promotion period. The advertisement and TPR tags do not, however, specifically state that the same discounted price per unit applies regardless of the quantity of units purchased.

**{¶ 34}** Anderson contends that "[b]y telling consumers that they would qualify for the discount by buying a specific multiple number of product units, but

withholding [from] them that they would also qualify for the same discount by buying from [Discount Drug Mart] even a single unit of the promoted product, [Discount Drug Mart] seeks to mislead consumers that they need to buy more than is necessary to qualify for the discount." She maintains that such conduct is "deceptive as a matter of law" under R.C. 1345.02(B)(8), fails to comply with Ohio Adm.Code 109:4-3-02(A)(2)(g) and violates R.C. 1345.02(A).

{¶ 35} This court rejected similar claims in *Grgat*, 2019-Ohio-4582, 135 N.E.3d 846. In that case, this court affirmed the trial court's granting of summary judgment in favor of the defendant, Giant Eagle, Inc. ("Giant Eagle"), and against the plaintiff where the plaintiff claimed that Giant Eagle's "multi-unit pricing promotions" were deceptive under R.C. 1345.02(B)(8). In *Grgat*, the plaintiff filed a complaint for declaratory and injunctive relief, alleging that Giant Eagle had violated R.C. 1345.02(A) by using shelf price tags that promoted a discounted price for a specific number of units of a particular product without specifying that the price of a single can was also discounted. *Id.* at ¶ 3. Giant Eagle's multi-unit pricing promotions were also advertised on signs within the store and in Giant Eagle's weekly circular, which was mailed to customers. *Id.* at ¶ 4.

{¶ 36} As one example of Giant Eagle's multi-unit pricing promotions, the plaintiff pointed to a promotion Giant Eagle ran in December 2017 on a brand of pizza sauce. The regular price of the product was $1.69 per can. During the sale, Giant Eagle used a shelf tag to indicate that customers who used their Giant Eagle loyalty card could buy tens cans of the sauce for $10 during the promotion period,

resulting in a savings of $6.90.  *Id.* at ¶ 5.  Customers were not, however, required to purchase ten cans of the pizza sauce "in order to derive the same price advantage." If a customer purchased one can of the sauce, using his or her loyalty card during the promotion period, that single can would cost $1.00.  The pro-rata sales price of a single can was not, however, listed on the shelf tag.  *Id.* at ¶ 6.  In other words, Giant Eagle did not expressly inform customers that they were not required to buy the specific multiple of products identified in its promotion in order to receive the price advantage described on the shelf tag.  *Id.*

{¶ 37} The parties filed cross-motions for summary judgment.  *Id.* at ¶ 7. The trial court granted Giant Eagle's motion for summary judgment and denied the plaintiff's motion, concluding that the plaintiff had failed to prove that Giant Eagle's multi-unit pricing promotions were deceptive under the CSPA.  *Id.* at ¶ 8.  The plaintiff appealed to this court.  *Id.* at ¶ 9.

{¶ 38} On appeal, the plaintiff argued that Giant Eagle's multi-unit pricing promotions were "deceptive per se" and that he was not require to prove that they were false or material to the transaction because R.C. 1345.02 is a strict liability statute.  *Id.* at ¶ 11.  This court disagreed.

{¶ 39} This court held that "R.C. 1345.02(B)(8) is not a strict liability statute" and found that the plaintiff had presented no evidence that any of Giant Eagle's multi-unit pricing promotions represented that a specific price advantage existed when it did not.  *Id.* at ¶ 18-19.  The court further found that there was "nothing deceptive or inaccurate about [the] representations" made in Giant Eagle's multi-

unit pricing promotions and rejected the plaintiff's claim that the shelf tags were deceptive "because they did not communicate the fact that customers could purchase less than the total number of items advertised and still receive the sale price per individual unit." *Id.* at ¶ 19-21. The court explained:

> [T]he fact that Giant Eagle did not advertise the pro-rata price per can is not, by itself, deceptive. There is no evidence that the shelf tags, signs, or circulars stated that customers had to buy the total amount of items advertised in the promotion in order to get the promotional price, when such was not the case. And there is no evidence that the shelf tags, signs, or circulars advertised a specific price advantage on, for example, the purchase of ten cans of pizza sauce for $10.00 and then charged unsuspecting consumers the nonsale price on lesser quantities.
>
> The undisputed evidence shows that when a customer buys lesser quantities of a product subject to a multi-unit pricing promotion, the customer is explicitly informed in writing of the unit price of a "10 for 10" type of promotion on the computer screen facing the customer when the product is scanned at the checkout before the customer pays for the item. * * * The same per-unit, pro-rata cost of a particular sale item is also set out in writing in the customer's receipt. Furthermore, * * * if a customer must buy the total amount of product listed in a multi-unit pricing promotion in order to get the sale price, the per-unit price for lesser quantities is expressly stated in the tag or sign. * * * Therefore, [the plaintiff] has failed to produce any evidence that Giant Eagle engaged in any deceptive acts or practices in violation of R.C. 1345.02(B)(8).

*Id.* at ¶ 22-23. The court also held that the trial court's finding that Giant Eagle did not violate R.C. 1345.02(B)(8) "comports with the specific language of Ohio Adm.Code 109-4-3-02(A)(2)(g)." *Id.* at ¶ 28. A similar result is warranted in this case.

{¶ 40} Anderson argues that this case is distinguishable from *Grgat* because unlike in *Grgat*, she presented "abundant evidence * * * demonstrating that

[Discount Drug Mart] regularly represents to consumers that specific price advantages exist when, in fact, they do not." She contends that Bergman's testimony establishes that Discount Drug Mart's multiple-unit pricing promotions have "'the likelihood of inducing a state of mind in the consumer that is not in accord with the facts,'" quoting *Grgat* at ¶ 18, because its advertisements and TPR tags "conceal[] * * * the whole truth" from consumers, i.e., that "they need not buy the multiple number of product units specified in the ads in order to reap the benefit of the price promotion." We disagree. Anderson's attempts to distinguish *Grgat* are unavailing.

{¶ 41} In support of her claims, Anderson points to evidence of several weekly advertising circulars in which Discount Drug Mart advertised multiple-unit pricing promotions on various products, including Discount Drug Mart's weekly circular for the period November 14, 2018 through November 20, 2018, which included the multiple-unit pricing promotion — "10 for $10" and "Save 9.90 on 10" — on 12-ounce bags PicSweet Simple Harvest frozen vegetables discussed above. That same weekly circular also included a multiple-unit pricing promotion on six-ounce boxes of Stove Top stuffing. The promotion stated that consumers could purchase "4 for $5" and save "4.16 on 4."[2] Bergman testified that, with respect to

---

[2] In addition to Discount Drug Mart's weekly circular for the promotion period November 14, 2018 through November 20, 2018, in her summary judgment filings, Anderson also presented evidence of Discount Drug Mart's weekly circular for the promotion period November 21, 2018 through November 27, 2018, which included a multiple-unit pricing promotion for Close-Up toothpaste ("5 for $5," "Save 4.95 on 5"), Discount Drug Mart's weekly circular for the promotion period December 5, 2018 through December 11, 2018, which included a multiple-unit pricing promotion for Mama Lucia meatballs ("2 for $2," "save 5.98 on 2"), Discount Drug Mart's weekly circular for the

these promotions (and every other multiple-unit pricing promotion identified by Anderson), customers did not need to purchase the specific multiple of units identified in the promotion in order to receive the discounted sales price. Customers could purchase fewer (or more) units than the specific multiple advertised and still receive the pro-rata discounted price per unit.

{¶ 42} Despite Anderson's assertions to the contrary, Bergman's testimony does not establish that Discount Drug Mart's multiple-unit pricing promotions are deceptive under R.C. 1345.02(B)(8) or that Discount Drug Mart otherwise violated R.C. 1345.02(A). An act or practice is not deceptive under R.C. 1345.08(B)(2) unless the supplier represents to consumers "that a specific price advantage exists, if it does not." Anderson presented no evidence that any of Discount Drug Mart's multiple-unit pricing promotions represented that a specific price advantage existed when it did not and presented no evidence from which a reasonable jury could otherwise find that Discount Drug Mart's representations in its multiple-unit pricing promotions were false, material and would mislead a reasonable consumer.

{¶ 43} Here, as in *Grgat*, there is nothing deceptive, untrue or inaccurate about any of Discount Drug Mart's representations in the multiple-unit pricing

---

promotion period December 26, 2018 through January 1, 2019, which included a multiple-unit pricing promotion for Charmin toilet paper ("2 for $12," "Save 5.18 on 2"), and Discount Drug Mart's weekly circular for the promotion period April 10, 2019 through April 16, 2019, which included multiple-unit pricing promotions for Duck Brand invisible tape ("2 for $3," "Save 90¢ on 2"), Wonka SweeTarts ("2 for $4," "Save 1.58 on 2"), Easter Tootsie Roll candies ("2 for $4," "Save 95¢ on 2"), Brach's Jelly Bird Eggs ("2 for $2," "Save 1.00 on 2"), Purex liquid laundry detergent ("2 for $4," "Save 3.96 on 2") and Purex scent booster crystals ("2 for $5," "Save 2.98 on 2").

promotions at issue. There is no dispute that Discount Drug Mart's representations in its multiple-unit pricing promotions accurately reflected the total price a customer would pay and the total savings a customer would realize if he or she purchased the specific multiple of products identified in the promotion.

{¶ 44} The fact that Discount Drug Mart did not advertise the pro-rata discounted sales price per unit and did not otherwise specifically indicate, in its advertisements or TPR tags, that customers could purchase fewer units than the multiple of units advertised and still receive the pro-rata discounted sales price per unit is not, in and of itself, deceptive. *See Grgat,* 2019-Ohio-4582, 135 N.E.3d 846, at ¶ 22. There is no evidence that Discount Drug Mart's advertisements or TPR tags stated that customers needed to buy the specific multiple of units advertised in the promotion in order to get the promotion price, when such was not the case. There is no evidence that Discount Drug Mart promoted a specific price advantage on a certain multiple of items and then charged consumers the nonsale price (or a price other than the pro-rata discounted sales price) on lesser quantities of the advertised item.

{¶ 45} Anderson also contends that this case is distinguishable from *Grgat* because, in this case, "[t]he undisputed evidence * * * indicates that [Discount Drug Mart's] multiple unit pricing promotions do not comport with the specific language of Ohio Adm.Code 109:4-3-02(A)(2)(g)." She claims that Bergman's testimony demonstrates (1) Discount Drug Mart's advertisements "run afoul of those requirements," (2) that there is, in fact, a minimum number of units consumers

must purchase from Discount Drug Mart during its multiple-unit pricing promotions in order for its advertised prices to apply — i.e., one unit — and (3) Discount Drug Mart violated Ohio Adm.Code 109:4-3-02(A)(2)(g) and engaged in deceptive conduct under R.C. 1345.02(B)(8) and 1345.02(A) by failing to disclose this information in its advertisements. In support of her claims, Anderson points to the following testimony by Bergman:

> Q. Now, with all these multiple unit pricing promotions, you indicated before that a customer could obtain the same price advantage just from buying a single unit of promoted product rather than buying the multiple number of the promoted product, right? * * * Is that correct?
>
> A. Yeah.
>
> * * *
>
> Q. So what is the minimum number of product units a consumer would need to buy to actually obtain the benefit of that price promotion?
>
> A. One.

{¶ 46} Anderson's argument is meritless. Simply because a consumer must actually purchase the advertised product during the promotion period in order to obtain the advertised sales price does not mean that "there is a minimum amount (or maximum amount) that must be purchased for the advertised price to apply" within the meaning of Ohio Adm.Code 109:4-3-02(A)(2)(g). Here, the record is clear that customers would be charged the same pro-rata discounted price per unit during the promotion period regardless of the number of units a customer purchased, i.e., that there was no minimum or maximum quantity a customer had

to purchase, for the pro-rata advertised price to apply.  Accordingly, Discount Drug Mart's failure to state in its advertisements or TPR tags that a consumer must purchase at least one unit of the advertised product for the pro-rata advertised price to apply does not violate Ohio Adm.Code 109:4-3-02(A)(2)(g) and does not constitute a deceptive act or practice under Ohio Adm.Code 109:4-3-02(A)(1) or R.C. 1345.02(A).  There is no evidence that Discount Drug Mart failed to make any required disclosures under Ohio Adm.Code 109:4-3-02(A)(2)(g).

{¶ 47} Construing the evidence in the light most favorable to Anderson, we find that there are no genuine issues of material fact and that, based on the undisputed facts, Discount Drug Mart is entitled to judgment as a matter law.  The trial court, therefore, properly granted Discount Drug Mart's motion for summary judgment and denied Anderson's motion for summary judgment.  Anderson's assignments of error are overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee shall recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS WITH SEPARATE OPINION ATTACHED

SEAN C. GALLAGHER, P.J., CONCURRING:

{¶ 49} Although I empathize with the apparent confusion created by the promotional practice to the ordinary consumer, it does not rise to the level of a legal violation; thus, I fully concur.

Keywords:

Civ.R. 56(C); declaratory and injunctive relief; deceptive act or practice; R.C. 1345.02(A); multiple-unit pricing promotions; R.C. 1345.02(B)(8); specific price advantage; Ohio Adm.Code 109:4-3-02(A)(1); Ohio Adm.Code 109:4-3-02(A)(2)(g).

Trial court did not err in granting defendant retailer's motion for summary judgment and denying plaintiff consumer's motion for summary judgment on complaint seeking declaratory and injunctive relief for alleged deceptive acts or practices under R.C. 1345.02(A). There was nothing deceptive, untrue or inaccurate in defendant's multiple-unit pricing promotions. Plaintiff did not show that defendant's multiple-unit pricing promotions represented that a specific price advantage existed when it did not under R.C. 1345.02(B)(8) and presented no evidence from which a reasonable jury could otherwise find that defendant's representations were false, material and would mislead a reasonable consumer. Defendant's failure to state in its advertisements that a consumer must purchase at least one unit of the advertised product for the pro-rata advertised sales price to apply did not violate Ohio Adm.Code 109:4-3-02(A)(2)(g) and did not constitute a deceptive act or practice under Ohio Adm.Code 109:4-3-02(A)(1) or R.C. 1345.02(A).